Walker *v.* Cottrell.

# W. W. WALKER *v.* J. H. COTTRELL *et al.*

1. ATTACHMENT. *Ancillary. May issue with summons.* The ancillary writ of attachment in actions *ex delicto* may issue simultaneously with the original summons.

   Cases cited: Thompson *v.* Carper, 1 Hum., 542; Barber *v.* Denning, 4 Sneed, 268.

2. SAME. *Same. Recitals in affidavit and writ.* It is essential to the validity of the ancillary attachment that the recitals in the affidavit and writ itself should conform to the requirements prescribed in 11 Hum., 545.

   Cases cited: Morris *v.* Davis, 4 Sneed, 453; Smith *v.* Foster, 3 Col., 139; Woolfolk *v.* Whitworth, 5 Col., 561; Woodfolk *v.* Wilkins, ex'r, MS., Nashville, 1872–3.

3. SAME. *Same. Object of.* The object of the ancillary attachment is to fasten upon the property of the defendant to secure the payment of the judgment the plaintiff expects to recover. It is not leading process, and cannot be made the instrument by which the court acquires jurisdiction of the person of the defendant.

   Cases cited: Boyd *v.* Buckingham, 10 Hum., 434; Thompson *v.* Carper, 11 Hum., 542; Barber *v.* Denning, 4 Sneed, 268; Ingle *v.* McCurry, 1 Heis., 26.

4. SAME. *Original. Its object and effect.* On the other hand, the office of the original attachment is twofold—1. To compel the appearance and answer of the defendant. 2. To subject his property to the satisfaction of the expected recovery. The levy and publication operate as constructive notice to the defendant, by which he is put under legal obligation to appear and answer, whether he does so or not.

   Cases cited: Green *v.* Shaver, 3 Hum., 139; Perkins *v.* Norvell, 6 Hum., 152; Snell *v.* Allen, 1 Swan, 211; Boggess *v.* Gamble, 3 Col., 154.

5. SAME. *Same. When execution may issue for unsatisfied balance.* Where the property attached is not sufficient to pay the judgment, execution may be issued for the balance as in other cases.

   Code cited: Sec. 3538.

6. SAME. *Same. Effect of irregularities in.* Mere irregularities of the proceedings in judgments on original attachment will not make them

Walker *v.* Cottrell.

void. It is sufficient in such cases that the statute regulations on the subject be substantially complied with.

Cases cited: Greenlaw *v.* Kernahaw, 4 Sneed, 371; McGavock *v.* Bell, 3 Col., 512.

7. SAME. *Same. What record, collaterally attacked, must show.* A record collaterally attacked should show that it had jurisdiction both of the person and subject-matter, otherwise it is void.

Cases cited: Overton's Lessee *v.* Lackey, Cooke, 193; Taul *v.* Collinsworth, 2 Yer., 579; Kelly *v.* Hooper, 3 Yer., 395; Groves *v.* Dodson, 8 Yer., 162; Planters' Bank *v.* Galloway, 11 Hum., 332; Rogers *v.* Rush, 4 Col., 272.

8. SAME. *Same. Omission of formal entry. When cured by recitals in decrees, etc. Extrinsic evidence not admissible, when.* Where a record attacked in a collateral proceeding failed to show a formal entry of actual publication in a newspaper in a suit begun by original attachment, as required by sec. 3522 of the Code—*Held,* that the recitals in the orders and decrees of the court embodied in the record, to the effect that such publication had been duly made, was sufficient evidence of the fact, unless contradicted by the record itself. In such a case, however, the record must speak for itself, and no extrinsic evidence can be received to show the truth or falsity of the statements contained therein.

Cases cited: Brown *v.* Wright, 4 Yer., 57; Strong *v.* Harris, 3 Hum., 451; Kilorease *v.* Blythe, 6 Hum., 390; Gilchrist *v.* Cannon, 1 Col., 587; Claybrooke *v.* Wade, 7 Col., 555.

Code cited: Secs. 3469, 3518 to 3524 inclusive, 4313.

## FROM KNOX.

Appeal from the Circuit Court at Knoxville. E. T. HALL, Judge.

BROWN & HICKS, CROZIER & SON and HOUCK for plaintiff in error.

JNO. BAXTER for defendants in error.

DEADERICK, J., delivered the opinion of the court.

In May, 1871, the plaintiff instituted an action of ejectment in the Circuit Court of Knox county against the defendants, tenants, in possession, of M. D. Bearden, for about five acres of land in West Knoxville. At June term, 1872, verdict and judgment were rendered in favor of defendants, and plaintiff has appealed in error to this court.

Plaintiff has deraigned his title regularly, as appears from the grant by the State and intermediate conveyances.   Indeed, it is admitted that the legal title to the land in controversy is still in the plaintiff, if the same has not been divested by the proceedings and decrees had in a cause in the Chancery Court at Knoxville, wherein Day, Griswold & Co. were complainants, and plaintiff Walker and others were defendants.   A transcript of the record of this chancery cause, and the deed of the clerk and master to M. D. Bearden, were filed and relied upon as a defense to the action in the Circuit Court.

The cause has been argued on both sides with marked ability by counsel.

It seems from the chancery record that on the 6th day of August, 1864, the complainants Day, Griswold & Co. filed their original attachment bill in the Chancery Court at Knoxville against the said "W. W. Walker, a non-resident of the State, H. B. Bowling, of Anderson county, and C. T. O'Keefe, a non-resident of the State."   The bill also states that the "said W. W. Walker has fled from the State, or so absconds as to prevent service of the ordinary process."   The bill alleges that said W. W. Walker and

.C. T. O'Keefe, on the 1st of November, 1859, executed two notes, each for $950, payable to Elijah Walker, and due respectively at fourteen and sixteen months after date; that said notes were endorsed in due course of trade to complainants for value received, and which notes were still unpaid and held by complainants.

The bill alleges that said W. W. Walker is the owner of the lot in question, and prays that it and other property described in the bill be attached and sold for the satisfaction of their said debts, and that publication be made as to the non-resident defendants.

Bond and security were given, and a writ of attachment was awarded and issued as prayed for, and levied upon the lot in controversy.

The bill was amended by leave of the court, by making additional parties, but it is not necessary to the determination of the questions involved in this record to notice said amendment further.

The following entry appears in the record as taken from the rule docket of the Chancery Court:

"Order from rule docket—Publication. Albert Day, Worsham Griswold, Albert P. Day, Chas. G. Day, Dan'l P. Seymour and Henry A. Whitman vs. W. Walker, H. B. Bowling and C. T. O'Keefe. The defendants W. W. Walker and C. T. O'Keefe being non-residents of Tennessee, as stated in the bill, it is ordered that publication be made for four successive weeks in the Knoxville Whig, notifying said defendants to appear before the Chancery Court at Knox-

ville on the first Monday of October next, then and there to make their defense to the bill, or the same will be taken for confessed as to them and set for hearing *ex parte*, August 24, 1864."

Bowling filed his answer 23d of November, 1864, and Elijah Walker, who had been made a defendant by amended bill, filed his answer April 6, 1865, and publication was ordered as to Jos. H. Walker, another defendant, made such by the amended bill.

At the July term, 1865, on the 27th day of the month, judgments *pro confesso* were taken against W. W. Walker, Joseph H. Walker and C. T. O'Keefe, the order reciting that "they are non-residents of the State, and that publication has been regularly made, notifying them to appear and defend this cause, for more than four weeks before court, in Brownlow's Knoxville Whig, a newspaper published in Knoxville," &c.

On the 29th of July, 1865, a decree was rendered against the defendants, which commences as follows: "Day, Griswold & Co. vs. W. W. Walker and others. On motion of complainant, by his solicitor, it is ordered that judgment *pro confesso* be taken against W. W. Walker, Joseph H. Walker and C. T. O'Keefe, for want of an answer,—it appearing that said defendants are non-residents of the State, and that publication has been duly made as to them for four successive weeks before this court, in Brownlow's Knoxville Whig, a newspaper published in Knoxville, Tennessee."

The decree then proceeds to render judgment for the amount of the two notes, and to order a sale of

the lot in controversy; upon six months credit, without the right of redemption.

The lot was sold, as directed by the decree, on the 15th of September, 1865.

At the October term, 1865, the biddings were opened and kept open for two days, when the master reported that M. D. Bearden became the purchaser of the five-acre lot at $375. The report of sale was confirmed, and the title divested out of W. W. Walker and vested in Bearden, and the master was directed to make him a title. Bearden having paid the purchase money, the master executed a deed for the lot.

The validity of the proceedings of the Chancery Court, and of the sale of the lot and conveyance to Bearden, depends upon the construction of our attachment laws.

Our statutes upon attachment have been very fully discussed in the course of the argument, and our own numerous adjudications upon this subject, as well as decisions of other State courts and of the Supreme Court of the United States, have been presented for our consideration; especially have two comparatively recent cases, which went from the United States Circuit Court at this place to the Supreme Court at Washington, been pressed upon our attention as settling the questions involved in this case.

In addition to the able and well-prepared briefs submitted by the counsel engaged in the cause, we have been furnished by them with the review of first and second Heiskell, by Chancellor W. F. Cooper,

Walker *v.* Cottrell.

published in the Southern Law Review of July, 1872, and with an able article in the July number, 1873, of the same Review, by W. I. Hicks, Esq., of the Knoxville bar, entitled "attachments, void and voidable." The first named article is chiefly devoted to a review of the decisions in attachment cases made by this court, concluding with the remark, that the decision in the case of *Cooper* v. *Reynolds,* 10 Wall., 315, is correct in principle and consistent with the right construction of our statutes upon the subject of attachment. The authority of that case has been earnestly pressed upon us by the counsel for the defendants in error.

The facts in that case, briefly stated, are, that on the 26th of September, 1863, W. G. Brownlow began an action of trespass *vi et armis,* by the issuance of original summons in the Circuit Court of Knox county, Tennessee, against Reynolds and others, laying damages for false imprisonment at $25,000. On the same day he filed his affidavit in said court, alleging that he had that day instituted his action of trespass, and praying for an ancillary attachment against the property of the defendants, in aid of his suit, &c. The summons issued, and the attachment was also issued with it. The summons was returned by the sheriff, that he had made search "and that none of the defendants were to be found in this county." The attachment was levied upon 160 acres of land as the property of defendant Reynolds. Publication was ordered, and judgment by default taken, and damages to the amount claimed in the summons were awarded

by the jury, the judgment reciting that publication had been made according to law. The land was sold under this judgment, and Cooper purchased it and went into possession. Reynolds instituted an action of ejectment against Cooper in the United States Circuit Court at Knoxville, and it was admitted that he had title to the land and was entitled to recover, unless Cooper had acquired title under the said judgment and sale. Judge Trigg, presiding, instructed the jury that it was necessary to the validity of the attachment that the affidavit upon which it issued should show in what court the suit was brought, and as it did not, nor state the cause or nature of the action, as required by the decisions of the Supreme Court of Tennessee, so as to connect itself with the summons, the judgment of the Circuit Court of Knox county was void. Verdict and judgment were rendered in favor of plaintiff, and the cause was taken to the Supreme Court of the United States by writ of error, where the judgment of the Circuit Court was reversed.

Mr. Justice Miller states three objections taken to the validity of the proceedings on attachment in the State court under which Cooper claimed title:

1. That by the law of Tennessee the attachment could not be issued at the beginning of the suit where the action was *ex delicto,* but only after suit commenced.

2. That the affidavit was defective.

3. That there was no publication of notice.

And adds that, "if sitting as on a writ of error

to the judgment of the State court, we might not find it easy to affirm or reverse the judgment on satisfactory grounds, notwithstanding the abundant citation of authorities from the Tennessee courts."

In regard to the first proposition, it was held by this court in 1851, in construing the act of 1843 authorizing the issuance of the ancillary attachment, that it might issue simultaneously with commencement of the suit: 11 Hum., 545. The same thing was again decided in 1856: 4 Sneed, 268. And this court has ever since conformed to these decisions.

2. Numerous decisions of this court have determined the necessity of, and the form required to be used in, the affidavit, as well as in the writ of attachment of the kind issued in the case' of *Brownlow* v. *Reynolds*, 11· Hum., 542; 4 Sneed, 453; 3 Col., 140; 5 Col., 561; *Woodfolk* v. *Wilkins, Ex'r*, MS., Nashville, 1872–3.

Under these decisions the affidavit was fatally defective.

Conceding that the decision as to recitals, declared in 11 Hum., 545, to be "essentially necessary" in the affidavit, and in the writ of attachment issued in aid of a pending suit, or suit commenced, was not necessary to the adjudication of the case in which it was made,—yet, in 4 Sneed, 452, the direct question was presented, and this court held that the recitals prescribed in the case in 11 Hum. in the affidavit and writ of attachment, were necessary to the validity of the ancillary attachment. And this decision has been uniformly followed since. Some form for the affidavit

and writ is essential, and the form prescribed by the cases named is so simple and brief, and is now so familiar to the profession by numerous subsequent decisions, that this court, as at present composed, has felt it to be its duty to leave the law in that respect as it found it.

But independently of this question as to publication, or the recital of it in the judgment, the decision on the case of *Cooper* v. *Reynolds* cannot be maintained under the laws of Tennessee.

If the affidavit and writ and publication had been in fact made as required by law, the only operation of the ancillary attachment is to hold the property subject to the judgment upon the original process.

It is conceded by Judge Cooper in his review that "the Judge who delivered the opinion in *Ingle* v. *McCurry,* 1 Heis., 26, correctly says, 'the *only* office of the ancillary attachment is to hold the property attached for the satisfaction of the judgment which may be rendered. It does not bring the defendant into court.'"

This doctrine is fully sustained in 10 Hum., 438; 11 Hum., 544, and 4 Sneed, 270, where it is said if the ancillary attachment in actions *ex delicto* be made the foundation of a suit, so as to dispense with the service of summons or original process, a party cannot abandon his writ and declare upon his attachment in such cases. And we do not understand that this proposition is questioned or controverted by the counsel for defendant in error.

The summons is the leading process in Tennessee.

Walker *v.* Cottrell.

There cannot be two leading writs in the same suit against the same defendant at the same time, and the ancillary attachment can never become, by the most perfect and literal compliance with the prescribed forms of the affidavit, writ and notice by publication, the instrument or means by which the court can obtain jurisdiction of the person of the defendant. This can only be done by summons, or by original or judicial attachment, levied and followed by the publication prescribed by the statutes, or voluntary appearance.

If, then, in the light of these authorities, the Circuit Court of Knox county acquired no jurisdiction of the person of Reynolds by the levy of the ancillary attachment, when and how was such jurisdiction acquired? Certainly not by service of summons—none was ever executed upon him; not by the levy of the ancillary attachment—none of either kind ever issued in the case; nor was there any voluntary appearance by him. The judgment was rendered, then, against Reynolds without his appearance or any notice whatever, actual, statutory, or constructive, and therefore absolutely void by all the authorities, unless it can be sustained upon the principle governing proceedings *in rem.* And this, we understand, is one ground upon which it is placed in the opinion of Justice Miller.

He says: "It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment (the ancillary writ) on it is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely

*in rem.* Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiffs."

Again it is said: "It is the duty of the court to order such publication, and to see that it has been properly made, and undoubtedly, if there has been no such publication a court of errors might reverse the judgment. But when the writ (attachment) has been issued, the property seized, and that property been condemned and sold, we cannot hold that the court had no jurisdiction for want of a sufficient publication of notice."

The opinion concludes with saying, "after a careful examination of the reported cases on this subject, we believe this to be the law as held by the courts of Tennessee."

The opinion treats the case as one of irregularities and errors in the proceedings, possibly existing, which might have been corrected by writ of error; but for which the judgment cannot be collaterally impeached, whereas the primary and fundamental question is, did the Circuit Court of Knox county have jurisdiction of the person of Reynolds so as to authorize it to render any judgment against him, or was the levy of the ancillary attachment upon his property a proceeding *in rem.*, under the laws of Tennessee, which authorized her Circuit Court to sell the thing levied on for plaintiff's demand.

We have seen that under the laws of Tennessee, according to the uniform holding of this court, the ancillary attachment could give the court no jurisdic-

tion of the person of Reynolds.   It did not bring him into court.   We have also seen that no summons was served upon him, nor original or judicial attachment issued in the case, nor appearance made by him. It is clear, therefore, that in it Field was right when he said in his dissenting opinion he was "of opinion that the State court of Tennessee never acquired jurisdiction in the case of *Brownlow* v. *Reynolds*," for it is well settled in this State that an attachment is a proceeding *in personam,* and not *in rem.*   The objects of the original attachment and judicial are to compel the appearance of the debtor, and security for the debt:   1 Swan, 211; 3 Hum., 141; 3 Col., 154; 6 Hum., 153.   So when the property is not sufficient to satisfy the recovery, execution may issue for the balance due, as in other cases:   Code, sec. 3538.

It is therefore apparent that a judgment upon original or judicial attachment rests upon the theory that by the levy and publication as prescribed by our statutes, the defendant has notice in contemplation of law of the proceedings against him.

Nor is it indispensible to the validity or sufficiency of the publication that it should be literally in the terms prescribed by the Code.   Words of equivalent or more comprehensive signification will be sufficient.

Where this court has held these attachment judgments void, it has been upon the grounds that the court pronouncing them had not acquired jurisdiction of the parties, for want of actual or constructive notice, and not because, as in the cases of 4 Sneed, 371 and

3 Col., 512, where the court had jurisdiction of the person and subject matter, upon account of errors or irregularities in the judgments.

The distinction is well defined and well understood: 4 Sneed, 378.

We are of opinion that the decision in the case of *Cooper* v. *Reynolds*, 10 Wal., is not in conformity to the decisions of this court, and to hold in conformity to the opinion in that case would overturn the uniform current of decisions made by this court upon the office and effect of the levy of an ancillary attachment.

But the case under consideration is not analogous to, or controlled by the case of *Cooper* v. *Reynolds*.

In that case the validity of the title claimed by Cooper depended upon a judgment at law, founded upon an ancillary attachment.

In this case Bearden claims a title derived from proceedings had upon an original attachment bill filed in the Chancery Court.

The bill charges an indebtedness in substantial compliance with sec. 3469 of the Code, and alleges in the caption of statement of the parties that the defendant, W. W. Walker, a non-resident of the State, with the additional charge that said "Walker has fled from the State or so absconds as to prevent service of the ordinary process." The bill, after the address to the Chancellor, proceeds as follows: "The bill of complaint of Albert Day * * * partners, etc., under the style of Day, Griswold & Co., filed in the Chancery Court at Knoxville, against W. W. Walker,

a. non-resident of the. State, H. B. Bowling of Anderson County, and against C. T. O'Keefe, a non-resident of the State." After setting out the claim sued on, the bill alleges that said Walker had fled, etc., in the language already quoted.

After describing the property of defendant Walker, and praying for an attachment and relief, the bill also prays for process, etc.; it also prays for publication to notify non-residents, etc.

It is not unusual to state the names and residences of the defendant at the beginning of the bill, as was done in this case, indeed the form is in compliance with sec. 4313 of the Code, which provides that "the address (to the Chancellor) should be followed by the names and residences of the parties," etc.

If the residence of the party may be alleged in the beginning of the statements of the bill, and we see no objection to it, we do not see why it may not also in the same connection be alleged that one of the defendants "is a non-resident of the State."

The residence or non-residence need be stated in the bill chiefly as a means of determining the character of process to be issued under the prayer of the bill, and as to residents, to direct to what county the process shall be issued; and while sec. 4314 of the Code directs that the statements of the bill should be clear and orderly, without prolixity or repetition, there is no prescribed form or order in which its allegations shall be made.

The rules of pleading in equity are less stringent than they are at law, when the object of pleading is

to reduce the matter of the litigation to a single issue, while in chancery the object is that the decree shall dispose and decide all the questions of law and fact in the case so as to reach the merits. We are of opinion therefore that it is sufficiently alleged in the bill that Walker was a non-resident of the State, especially when considered in connection with the other allegations already referred to.

But this question is not one upon which the jurisdiction of the person depended, and the decree could not be held void for any defective allegations of that character if the court had obtained jurisdiction of defendant's person.

It is more earnestly insisted for plaintiff in error, that there is no proof of legal publication of notice, and that the decree against him is void on that account, it being essential to the jurisdiction of the court that the publication should be made after the levy of attachment as prescribed in sec. 3518 to sec. 3524.

By sec. 3518 it is provided, that the officer granting the attachment may at the time direct, that as soon as the attachment is levied, publication in a newspaper be made requiring the defendant to appear, at a time and place to be mentioned in such publication, before the court having cognizance of the attachment and defend the action thus commenced, otherwise the cause may be proceeded with *ex parte*.

By sec. 3519: If the order of publication is not made as directed in sec. 3518 the clerk of the court itself before whom the attachment is returned may make such order at any time thereafter.

And by sec. 3520, the order of publication should be entered upon the rule docket of minutes of the court.

Sec. 3521 provides, that as soon as the attachment is levied the clerk shall make out, in pursuance of the order of publication, a memorandum or notice, and publish the same in a newspaper.

This memorandum or notice which is to be published is not the order of publication as made in secs. 3518 to 3520, but is different, and "shall contain the names of the parties, the style of the court to which the attachment is made returnable, the cause alleged for suing it out, and the time and place at which the defendant is required to appear and defend the attachment suit.

Sec. 3523 prescribes the time and place of publication, and the next section, 3524, provides that the (levy) attachment and publication as prescribed in the antecedent sections are in lieu of personal service upon the defendant, and when the attachment has been levied and the publication has been made, the plaintiff may proceed as if the suit had been commenced by summons only executed upon the defendant.

Such are the requirements of the statute, in order to give jurisdiction of the person without the actual service of summons upon the defendant.

To dispense with the prescribed publication, and proceed to take jurisdiction upon the levy of the attachment alone, would be to act in violation of the statutes and not in conformity to them. The case of *Ingle* v. *McCurry* proceeds upon the idea that the

18—VOL. 6.

judgment at law was void for want of actual or constructive notice.

No publication, as required by law, was shown to have been made, and we may as well dispense with the levy as with the publication.

A record collaterally attacked should show that the court rendering it had jurisdiction of the person and subject matter, otherwise it is void: 3 Yer., 395; Cooke, 193; 1 Hum., 332; 2 Yer., 579; 8 Yer., 162; 9 Yer., —; but are required by the statute: *Rogers* v. *Rush*, 4 Col., 272.

It is contrary to the principles of justice to take by judicial action the property of a party and give it to another, without notice of a pending suit against him. But the statute has provided that by doing certain things which are intended to give notice, it may be presumed that notice was had, and the plaintiff may proceed to judgment. But to authorize such presumption, the acts prescribed must be done substantially, and unless the record of the cause shows that the court had jurisdiction of the person, in proceedings *in personam*, the judgment is void. If the defendant has no notice, or its equivalent by statute, the judgment is void.

Recurring to the record in the chancery proceedings we find that the order of publication taken from the rule docket is in strict conformity to the requirements of secs. 3518 to 3520 of the Code, but there does not appear any formal entry of the publication itself of the notice required by sec. 3522.

On the 27th of July, 1865, the record shows an

entry was made on the minutes of the court, reciting that it appearing from the allegations of the bill and amended bill that W. W. Walker, Jos. H. Walker and C. T. O'Keefe are non-residents of the State, and that publication has been regularly made notifying them to appear and defend this cause for more than four weeks before court, in Brownlow's Knoxville Whig, a newspaper published in Knoxville. On application of complainant judgment *pro confesso* is taken against said persons for want of answers, and the cause set down for hearing *ex parte.*

And on the 29th of July, 1865, a final decree was entered, in which it is recited: "On motion of complainant, by his solicitor, it is ordered that judgment *pro confesso* be taken against W. W. Walker, Joseph H. Walker and C. T. O'Keefe for want of an answer, it appearing to the court that said defendants are non-residents of the State, and that publication has been duly made as to them four weeks successively, before this court, in Brownlow's Knoxville Whig, a newspaper published in Knoxville, Tennessee," etc.

In 6 Hum., 390, Judge Reese, in delivering the opinion of the court, said: "The record in this case states that it appeared to the satisfaction of the court that publication has been made," was sufficient evidence of the fact, and that the court was not bound to show the proofs of publication.

In *Gilchrist* v. *Cannon,* 1 Col., 587, Judge McKinney says: "It is insisted by the counsel of complainants, that it does not distinctly appear, from the record, that publication was made as to the heirs of Gilchrist, who were non-residents, and therefore they

were not parties, and of course not affected by the decree. The answer to this objection is, that the decree of the Chancellor recites that publication was duly made as to said heirs. This must be taken as sufficient in this court, unless it appeared that the facts were positively otherwise, from something in the record, and there is nothing in the record to contradict the decree in this respect." To the same effect is the case of *Claybrook* v. *Wade,* 7 Col., 555.

The plaintiff below upon the trial of this action of ejectment offered to read an advertisement in Brownlow's Knoxville Whig to show that due publication was not in fact made as recited in the judgment *pro confesso* and the final decree in the cause.

This was objected to by defendant's counsel upon the ground that it was an offer to contradict the record in the Chancery Court. The evidence was clearly inadmissible.

The recitals in the decree can only be contradicted by the record in the case, and extrinsic evidence is not admissible to contradict a record when collaterally attacked: 1 Col., 587; 4 Yer., 57; 3 Hum., 451.

The recital of the judgment *pro confesso* taken August, 1864, that publication was duly made, and the repetition of such recital in the decree in July, 1865, must be taken as true, there being nothing to contradict it in the record. Nor was there any error in rejecting the evidence offered in contradiction of the recitals of the record.

The charge of the Circuit Judge was unexceptionable, and the judgment must be affirmed.