# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 27, 2015 Session Heard at Cookeville[1]

## KIGHWAUNDA M. YARDLEY v. HOSPITAL HOUSEKEEPING SYSTEMS, LLC

**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 313cv00622     Aleta A. Trauger, Judge**

_____

**No. M2014-01723-SC-R23-CV – Filed August 21, 2015**

_____

We accepted a question of law certified by the United States District Court for the Middle District of Tennessee to determine whether a job applicant has a cause of action under the Tennessee Workers' Compensation Act against a prospective employer for failure to hire if the prospective employer failed to hire the job applicant because that applicant had filed, or is likely to file, a workers' compensation claim against a previous employer, and if such a cause of action exists, what standard should apply. We hold that there is no cause of action for failure to hire under the Tennessee Workers' Compensation Act.

## Tenn. Sup. Ct. R. 23 Certified Question of Law

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

David L. Cooper, Nashville, Tennessee, for the appellant, Kighwaunda M. Yardley.

Fred C. Statum III and Thomas W. Whitworth, Nashville, Tennessee, for the appellee, Hospital Housekeeping Systems, LLC.

Wade B. Cowan and Douglas B. Janney III, Nashville, Tennessee; Justin S. Gilbert, Jackson, Tennessee; Jennifer B. Morton, Knoxville, Tennessee; and Bryce W. Ashby and William B. Ryan, Memphis, Tennessee, for the amicus curiae, Tennessee Employment Lawyers Association.

_____

[1] Oral argument was heard in this case on May 27, 2015, on the campus of Tennessee Technological University in Cookeville, Tennessee, as part of the Tennessee American Legion Boys State S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Dale Conder Jr., Jackson, Tennessee, for the amicus curiae, Tennessee Defense Lawyers Association.

## OPINION

### Factual and Procedural Background

Beginning in 1998, Kighwaunda M. Yardley worked as a housekeeping aide at the University Medical Center ("the Hospital") in Lebanon.[2]  In 2010, Ms. Yardley was hurt on the job and began receiving workers' compensation benefits.  Between June 2010 and September 2012, she received medical treatment for her injury.  As of July 1, 2012, she was performing light duty work for the Hospital's materials management group with the expectation that when released to full duty, she would return to her job as a housekeeping aide.

On January 1, 2012, the Hospital entered into a contract with Hospital Housekeeping Systems ("the Company"), whereby the Company agreed to provide housekeeping services for the Hospital beginning July 1, 2012.  As part of its contract, the Company agreed to interview the Hospital's current housekeeping employees and, at the Company's discretion, hire the employees to continue in their positions.  The Company hired most of the Hospital's housekeeping staff.  As of July 1, 2012, Ms. Yardley had neither been interviewed nor hired because she was still on light duty.  When Ms. Yardley was released to full duty, she sought to return to work in the housekeeping department.  The Hospital referred her to the Company for employment.  In August 2012, she spoke with the Company's Division Vice President, Michael Cox, who, according to Ms. Yardley, told her that the Company would not hire anyone receiving workers' compensation benefits.  In an email to the Company, Mr. Cox said that Ms. Yardley had "been out on Workers['] Comp with the hospital long before [the Company's] arrival," that her shoulder was hurting her again, and that "[b]ringing her on board with [the Company] would seem to be a Workers['] Comp claim waiting to happen."  Mr. Cox said he "would advise against [hiring Ms. Yardley] IF we have that option."  After she was not hired, Ms. Yardley sued the Company in the United States District Court for the Middle District of Tennessee.

We accepted the following certified question of law from the federal district court: If a prospective employer refuses to hire a job applicant because that applicant had filed, or is likely to file, a workers' compensation claim incurred while working for a previous

---

[2] These facts are taken from the United States District Court's Order pursuant to Tennessee Supreme Court Rule 23.  Under Rule 23, we only answer questions of law, not questions of fact or controversies as a whole.  *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010).  For the purposes of this certified question, we consider only the facts included in the Order and assume these facts to be true.

employer, can that applicant maintain a cause of action under the Workers' Compensation Act ("the Act") against the prospective employer for failure to hire, and if such a claim exists, should courts apply the motivating factor standard of causation, as they do with retaliatory discharge claims?

**Analysis**

Tennessee Supreme Court Rule 23 allows this Court to answer questions of Tennessee law certified by any federal court when "there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. As head of this state's judiciary and as part of our inherent judicial power under article VI, section 1 of the Tennessee Constitution, we are authorized to answer certified questions of law. *Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty.*, 382 S.W.3d 318, 320 (Tenn. 2012) (citing *Seals*, 301 S.W.3d at 241). We may "accept and answer a question of state law certified . . . by the federal court to assist the federal court in deciding a question of state law." *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 521 (Tenn. 2006). Rather than requiring a federal court to make the law of this State or to abstain from deciding the case until the state courts resolve the point of law, answering certified questions from federal courts promotes judicial efficiency and comity and protects this State's sovereignty. *Id.* at 523.

This is a case of first impression. In Tennessee, there is no statutory or common law cause of action for retaliatory failure to hire. Ms. Yardley asks this Court to create this cause of action. Relying on public policy grounds and retaliatory discharge cases from this and other jurisdictions, Ms. Yardley argues that if employers can lawfully refuse to hire job applicants because applicants have filed, or are likely to file, workers' compensation claims, this action by employers will have a chilling effect on workers' decisions to file claims and obtain their rightful remedies under the Act. She also asserts that if employers are allowed to refuse to hire applicants on such a basis, it would frustrate the purpose of the Second Injury Fund, *see* Tenn. Code Ann. § 50-6-208 (2014), which the Legislature established to encourage the hiring of workers who have suffered previous injuries. Amicus curiae Tennessee Employment Lawyers Association argues that an employer's failure to hire a job applicant because the applicant asserted a claim for compensation against a previous employer constitutes a device that would relieve an employer of an obligation under the Act; such devices are prohibited by Tennessee Code Annotated section 50-6-114 (2014).

The Company and amicus curiae Tennessee Defense Lawyers Association oppose the creation of a cause of action for retaliatory failure to hire. They argue that there was no employer-employee relationship between Ms. Yardley and the Company and,

therefore, the retaliatory discharge cases cited by Ms. Yardley are distinguishable. They contend that Tennessee's employment-at-will doctrine should be protected, that employers should be free to hire and fire as they choose, and that an exception to the employment-at-will doctrine should not be made in this case.

Workers' compensation laws have been in effect in the United States for more than a century. *See, e.g.*, *N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 197 (1917). These laws "were conceived as a means of providing prompt, dignified, and certain financial relief for workers who suffered employment-related injuries or diseases[,]" Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 406 (1988) (footnote omitted), and were necessary because of the "difficulty of proving fault in the industrial setting and the availability of the [defenses of contributory negligence, assumption of the risk, and the fellow servant rule, which] more often than not defeated the worker's hope for recovery," *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 442 (Tenn. 1984). Since the Act was passed in 1919, it has provided compensation for injured employees, eliminated employers' potential defenses, set attorney's fees, provided for a system of adjudication, abrogated the right of employees to pursue common law negligence actions, and capped employees' potential recovery. *See* Act of Feb. 5, 1919, ch. 123 § 2, 1919 Tenn. Pub. Acts 369; *see also* Tenn. Code Ann. §§ 50-6-101 to -921. Thus, the Act is a "comprehensive [legal] system that reflects a compromise between the interests of employers and employees." *Clanton*, 677 S.W.2d at 443.

Workers' compensation laws necessarily interact with the State's employment laws. Tennessee recognizes the employment-at-will doctrine as "the fundamental principle controlling the relationship between employers and employees." *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997). Under this doctrine, either the employer or the employee may terminate the employment relationship with or without cause. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992) (citing *Payne v. W. & Atl. R.R. Co.*, 81 Tenn. 507, 509 (1884). "[A]n employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system." *Mason*, 942 S.W.2d at 474 (quoting *Clifford v. Cactus Drilling Corp.*, 353 N.W.2d 469, 474 (Mich. 1984)). Thus, the doctrine "recognizes that employers need the freedom to make their own business judgments without interference from the courts." *Williams v. City of Burns*, No. M2012-02423-SC-R11-CV, 2015 WL 2265531, at *7 (Tenn. May 4, 2015) (quoting *Mason*, 942 S.W.2d at 474). Both job applicants and prospective employers may freely choose whether to enter into the employer-employee relationship. *See id.*

One exception to the employment-at-will doctrine is that an at-will employee may not be fired for taking an action encouraged by public policy. *Id.* (citing *Chism v.*

*Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988), *superseded by statute*, Tenn. Code Ann. § 50-1-304(g) (2014), *as recognized in Williams*, 2015 WL 2265531, at *8). Filing a workers' compensation claim is an action encouraged by public policy. *See Clanton*, 677 S.W.2d at 444-45 (citing *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425, 427 (Ind. 1973)). Therefore, an employer may not lawfully discharge an employee for filing a workers' compensation claim. *Id.* at 445. An employee who believes that she has been fired for filing a workers' compensation claim may bring a claim for retaliatory discharge. *Id.* This cause of action was recognized "to enforce the duty of the employer, to secure the rights of the employee[,] and to carry out the intention of the [L]egislature." *Id.*

To decide whether a job applicant may bring a retaliatory failure to hire action against a prospective employer, we start by examining Tennessee Code Annotated section 50-6-114(a). When interpreting statutes, our primary function is to carry out the Legislature's intent without broadening the statute beyond its intended scope. *State v. Burgins*, No. E2014-02110-SC-R8-CO, 2015 WL 1569236, at *4 (Tenn. Apr. 7, 2015) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013)). To carry out this function, we presume that every word in a statute has meaning and purpose and should be given full effect, as long as the result does not violate the Legislature's obvious intent. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When the statutory language is clear and unambiguous, we simply apply its plain meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

Tennessee Code Annotated section 50-6-114 provides, in part, "No contract or agreement, written or implied, or rule, regulation or other device, shall in any manner operate to relieve any employer . . . of any obligation created by this chapter . . . ." Tenn. Code Ann. § 50-6-114(a).[3] Although an employer's decision to fire an employee for filing a worker's compensation claim has been held to be an unlawful device, *Clanton*, 677 S.W.2d at 445, this holding does not apply to Ms. Yardley because she was not an employee of the Company. The Act applies to employers and employees. An employer is defined as "any individual, firm, association or corporation . . . using the services of not less than five (5) persons for pay." Tenn. Code Ann. § 50-6-102(12) (2014). An employee is defined as a "person . . . in the service of an employer . . . under any contract of hire or apprenticeship, written or implied." Tenn. Code Ann. § 50-6-102(11)(A). Under this definition, Ms. Yardley was not an employee, but merely a job applicant. As such, the Company had no obligation to her under the Act. *See Stratton v. United*

---

[3] Obligations under the Act include, among other things, providing medical treatment, Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014), and providing "compensation for personal injury or death by accident arising primarily out of and in the course and scope of employment," Tenn. Code Ann. § 50-6-103(a) (2014).

*Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985) ("The basis of liability under the Worker[s'] Compensation Act is the employer-employee relationship.").

Ms. Yardley argues that retaliatory discharge cases are analogous. The elements of a common law prima facie case for a workers' compensation retaliatory discharge claim are: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993), *overruled on other grounds by Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73 (Tenn. 2012).

Ms. Yardley cites a number of retaliatory discharge cases to support her position and argues that the Tennessee and out-of-state cases cited form the basis for a retaliatory failure-to-hire cause of action. But these cases are distinguishable, as they all involve parties who had been in an employer-employee relationship with each other at the time the tort allegedly occurred. Ms. Yardley was not an employee of the Company, and thus, there was never a relationship. This is an important distinction. The employer-employee relationship involves mutual acquiescence, and certain levels of trust and dependence are created upon its formation. *See Mason*, 942 S.W.2d at 474. Both parties have rights and responsibilities that naturally flow from that relationship and which are not present before the relationship is formed. *See Stratton*, 695 S.W.2d at 950. For this reason, failure to hire cannot be equated with termination of employment, as employees and job applicants are on different footing.

A few states have statutory provisions expressly allowing claims for retaliatory failure to hire. *See, e.g.*, Fla. Stat. § 440.105(2)(a)2 (2015); 775 Ill. Comp. Stat. Ann. 5/6-101 (2015); La. Rev. Stat. Ann. 23:1361 (2014); Me. Rev. Stat. tit. 5, § 4572 (2014); Mass. Gen. Laws Ann. ch. 152, § 75B (2015). Tennessee does not. We have found no judicial decision recognizing a claim for retaliatory failure to hire under state common law or public policy, and a number of courts have expressly refused to recognize such claims. *See, e.g.*, *Baker v. Campbell Cnty. Bd. of Educ.*, 180 S.W.3d 479, 484 (Ky. Ct. App. 2005) (holding that no cause of action exists under Kentucky public policy for retaliatory failure to hire); *see also Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 148 (6th Cir. 2009) (declining to recognize failure-to-hire claims as a public policy exception to the employment-at-will doctrine under Ohio law); *Sanchez v. Phillip Morris, Inc.*, 992 F.2d 244, 249 (10th Cir. 1993) (declining to recognize common law failure-to-hire claims under Oklahoma law); *Wordekemper v. W. Iowa Homes & Equip., Inc.*, 262 F. Supp. 2d 973, 988 (N.D. Iowa 2003) (noting that "Iowa has never recognized a cause of action for retaliatory failure to hire or rehire a prospective employee based on that employee's past

workers' compensation claims"); *cf. Warnek v. ABB Combustion Eng'g Servs., Inc.*, 972 P.2d 453, 455-57 (Wash. 1999) (declining to recognize a common law claim for failure to rehire an employee on the basis of filing a workers' compensation claim, as "[t]here is a distinction between discharge . . . during the course of employment and not being rehired for new employment").

Ms. Yardley argues that if employers may legally refuse to hire job applicants because they have current or prospective workers' compensation claims, then employees will be discouraged from filing such claims. We find the alleged harm to be too speculative to justify an exception to the employment-at-will doctrine. This State has an interest in ensuring that its citizens have access to employment and the ability to earn a livelihood, but at the same time, employers should have freedom to choose their employees. *See Mason*, 942 S.W.2d at 474 ("[E]mployers need the freedom to make their own business judgments without interference from the courts."); *see also Williams*, 2015 WL 2265531, at *7 (quoting *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006)) (noting that the employment-at-will doctrine is "a bedrock of Tennessee common law").

Ms. Yardley also argues that the establishment of the Second Injury Fund, Tenn. Code Ann. § 50-6-208, supports her position because it is intended to encourage the hiring of workers who have suffered previous injuries by relieving employers of part of their workers' compensation liability, *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 813 (Tenn. 1993). We do not agree. We cannot read into the language of the statute creating the Second Injury Fund a legislative intent to allow job applicants who have been previously injured to sue prospective employers for failure to hire. To the contrary, the establishment of the Second Injury Fund evidences the Legislature's recognition that the hiring of persons who have suffered a prior work-related injury is encouraged, but not required by state law.

**Conclusion**

We respectfully decline to create an exception to the employment-at-will doctrine, and we therefore hold that a job applicant does not have a cause of action under the Tennessee Workers' Compensation Act against a prospective employer for failure to hire if the prospective employer refused to hire the job applicant because that applicant had filed, or is likely to file, a workers' compensation claim against a previous employer. We pretermit the second certified question based on our ruling on the first question. The Clerk is directed to transmit a copy of this opinion to the United States District Court for the Middle District of Tennessee in accordance with Tennessee Supreme Court Rule 23,

section 8.  Costs in this Court are taxed equally to Kighwaunda M. Yardley and Hospital Housekeeping Systems, LLC, and any surety, for which execution may issue if necessary.


                                                 _____

SHARON G. LEE, CHIEF JUSTICE