IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 9, 2017 Session

## EMBRAER AIRCRAFT MAINTENANCE SERVICES, INC. v. AEROCENTURY CORP.

**Rule 23 Certified Question of Law**
**from the United States District Court**
**for the Middle District of Tennessee**
**No. 3:13-cv-00059        Aleta A. Trauger, Judge**

———————————————————

**No. M2016-00649-SC-R23-CV**

———————————————————

In this case, the petitioner had a repairman's lien on personal property and filed an action in federal district court to enforce the lien by original attachment of the lien-subject property. During the pendency of the federal court action, the lien-subject property was sold to a purchaser and was no longer available for attachment, so the lienholder sought to reach the proceeds from the sale of the lien-subject property. The federal court then sought certification under Tennessee Supreme Court Rule 23 of two questions: (1) May a repairman's lien arising under Tennessee Code Annotated section 66-19-101 (2015) be enforced by a method other than attachment of the lien-subject property itself? and (2) In Tennessee, under what circumstances, if any, may a court attach the proceeds of the sale of lien-subject property, or otherwise reach them with a judgment, where the owner has rendered attachment of the lien-subject property impracticable or impossible after the initiation of a foreclosure proceeding? We answer the first question by interpretation of Tennessee Code Annotated section 66-21-101 (2015), which addresses enforcement of a statutory lien by original attachment where the lien statute does not specify a method to enforce the lien. The lienholder has no statutory lien on the proceeds from the sale of the lien-subject property, and section 66-21-101 addresses only enforcement of a statutory lien. Accordingly, section 66-21-101 is not a statutory vehicle for the lienholder to reach the proceeds from the sale of the lien-subject property. Section 66-21-101 neither provides for nor excludes other remedies that may be available to the lienholder to reach the proceeds from the sale of the lien-subject property. The second question certified by the federal district court in this case is not a defined question of unsettled Tennessee law, but it is more in the nature of an open-ended inquiry regarding other remedies that might enable the lienholder to reach the proceeds from the sale of the lien-subject property. Such an open-ended inquiry is not suitable for certification under Tennessee Supreme

Court Rule 23, and there is ample Tennessee case law available to the parties on other possible remedies, so we respectfully decline to address the merits of the second certified question.

## Tenn. Sup. Ct. R. 23 Certified Question of Law

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Derek W. Edwards, Nashville, Tennessee, for the petitioner, Embraer Aircraft Maintenance Services, Inc.

Samuel P. Funk and David Gilbert Schuette, Nashville, Tennessee, for the respondent, AeroCentury Corp.

## OPINION

The certified questions in this case come from the United States District Court for the Middle District of Tennessee ("District Court") pursuant to Rule 23 of the Rules of the Supreme Court of the State of Tennessee.[1]  Because this is a certified question from a federal district court, we have no record.[2]  Consequently, our recitation of the facts and the procedural background is taken from the District Court's order certifying the questions to our Court. *See Allmand v. Pavletic*, 292 S.W.3d 618, 621 (Tenn. 2009).  We assume the facts as recited in the District Court order to be true. *Yardley v. Hosp. Housekeeping Sys.*, 470 S.W.3d 800, 802 n.2 (Tenn. 2015).

---

[1] Tennessee Supreme Court Rule 23, section 1 provides:

> The Supreme Court may, at its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee . . . when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

[2] Under Tennessee Supreme Court Rule 23, this Court may obtain the record, but that was not done in this case.  Tenn. Sup. Ct. R. 23, § 8.

## FACTUAL AND PROCEDURAL BACKGROUND

When the events giving rise to this case began, Respondent AeroCentury Corp. ("AeroCentury"),[3] a California corporation, owned the property that is the subject of this case, a SAAB-SANIA Model SAAB 340B aircraft ("Aircraft"). AeroCentury had leased the Aircraft to a regional airline, Colgan Air, Inc. ("Colgan"). In late 2011, Colgan's lease on the Aircraft was close to expiring and Colgan was scheduled to return the Aircraft to AeroCentury upon expiration of the lease. The terms of the lease required Colgan to complete a lease return inspection and perform certain maintenance service and repair work on the Aircraft before returning possession of it to AeroCentury.

To fulfill these lease obligations, Colgan contracted with Petitioner Embraer Aircraft Maintenance Services, Inc. ("Embraer"), headquartered in Nashville, Tennessee, to perform the inspection, the maintenance, and any needed repairs. On October 29, 2011, Colgan delivered the Aircraft to Embraer's Nashville facility. Embraer inspected the Aircraft and identified the service and repairs that would be necessary to put the Aircraft in a condition that complied with the terms of the lease. Over the next three months Embraer worked with representatives of both Colgan and AeroCentury to develop and revise a "Bill of Work" detailing the service and repairs to be done on the Aircraft.[4]

In January, 2012, Embraer completed the service and repairs listed in the Bill of Work and released the Aircraft to Colgan. When Embraer completed its work on the Aircraft, a repairman's lien secured by the Aircraft ("Lien") automatically arose under Tennessee Code Annotated sections 66-19-101 and 66-19-102.

On January 25, 2012, Embraer issued an invoice to Colgan for the work completed, in the amount of $351,465.20. Colgan never paid the invoice. On April 1, 2012, Colgan filed a Chapter 11 bankruptcy petition. *In re Pinnacle Airlines Corp.*, 483 B.R. 381, 396 (Bankr. S.D.N.Y. 2012). Soon afterward, Embraer perfected its Lien by filing a notice with the Register of Deeds for Davidson County, Tennessee on April 9, 2012, and also filing a separate notice with the Federal Aviation Administration on April 10, 2012. Embraer notified Colgan and AeroCentury of the Lien. *See* Tenn. Code Ann. § 66-19-301 (2015) (liens on aircraft must be filed with the county in which actions

---

[3] Under section 6 of Tennessee Supreme Court Rule 23, "The party designated by the certifying court as the moving party shall be referred to as the petitioner and the party adverse to the petitioner shall be referred to as the respondent."

[4] An agent of AeroCentury visited Embraer's facility in Nashville and participated in the direction and auditing of the work Embraer performed.

giving rise to the lien occurred, and notice of the lien shall be mailed to the party for whose account the work was performed and to any party known to have an ownership interest in the aircraft).

On January 25, 2013, Embraer initiated an action in the District Court to foreclose on the Aircraft.[5] Embraer asked the District Court to direct the sale of the Aircraft, order AeroCentury to surrender possession of the Aircraft and its title to the new owner, and then apply the proceeds of the sale to the debt owed by Colgan to Embraer.

Despite the pending foreclosure proceedings, in July 2013, AeroCentury leased the Aircraft to Private Corporation International Joint Stock Aviation Company URGA ("URGA"), an aviation company located in Ukraine. Pursuant to the new lease, the Aircraft was exported from the United States to Ukraine and removed from registration in the United States.

AeroCentury also gave URGA an option to purchase the Aircraft. On March 25, 2014, URGA exercised its option and purchased the Aircraft from AeroCentury. The Purchase Agreement with URGA stated that AeroCentury conveyed title to the Aircraft "free and clear" of encumbrances, except for the Lien, which would purportedly be "removed by [AeroCentury] post-Closing." AeroCentury did not notify Embraer of the lease to URGA or URGA's purchase of the Aircraft.

On November 24, 2015, Embraer filed a motion in the District Court seeking summary judgment against AeroCentury, asking the District Court to grant the relief it had requested. On January 5, 2016, AeroCentury filed a response in opposition to Embraer's summary judgment motion. The response claimed that "any foreclosure order from the Court, related to AeroCentury, is of no value to Embraer," because AeroCentury had sold the Aircraft and thus could not deliver it to the District Court for sale.

AeroCentury's response to Embraer's summary judgment motion was its first notice to the District Court and to Embraer that AeroCentury had sold the Aircraft. In light of this turn of events, Embraer asked the District Court to order AeroCentury to deliver the proceeds of the sale of the Aircraft to the District Court, so that the proceeds could be applied to satisfy the debt to Embraer for the work it performed on the Aircraft. At that juncture in the proceedings, the District Court entered its certification order, asking this Court to address the issues listed in its order.

---

[5] At some point prior to the foreclosure proceeding, AeroCentury regained possession of the Aircraft from Colgan.

The District Court's certification order is premised on enforcement of the Petitioner's section 66-19-101 Lien under the "catch-all" enforcement provision contained in Tennessee Code Annotated section 66-21-101 (2015). Section 66-21-101 provides that statutory liens for which no specific method of enforcement is prescribed by statute "may be enforced by original attachment issued by any court having jurisdiction . . . to be levied on the property upon which the lien exists, be it either in the hands of the creditor, owner, or other party not an innocent purchaser." Tenn. Code Ann. § 66-21-101. Noting that section 66-21-101 uses the permissive word "may" in connection with enforcement of a lien by original attachment, the District Court questioned whether Tennessee courts "recognize methods *other* than attachment of the lien-subject property for the enforcement of a lien that arises under Tennessee law." Neither the District Court nor the parties identified any Tennessee cases that used the section 66-21-101 catch-all enforcement provision to enforce a lien in a manner other than by attachment of the lien-subject property. The District Court concluded from this that the issue was "unsettled" under Tennessee law and also concluded that it was dispositive of Embraer's motion for summary judgment. Based on these conclusions, the District Court certified the two questions stated above and asked our Court to accept certification to address them. We accepted certification and heard oral argument on the certified questions.

## ANALYSIS

Tennessee Supreme Court Rule 23 provides that this Court "may, at its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee" when "there are questions of law of this state which will be determinative of the cause" and "there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1; *see also Yardley*, 470 S.W.3d at 803. Rule 23 "promotes judicial efficiency and comity and protects this State's sovereignty." *Yardley*, 470 S.W.3d at 803. "We may 'accept and answer a question of state law certified . . . by the federal court to assist the federal court in deciding a question of state law.'" *Id.* (quoting *Haley v. Univ. of Tenn. Knoxville*, 188 S.W.3d 518, 521 (Tenn. 2006)). "Although 'answering a certified question is not an adjudicative function' and, in consequence, 'not an exercise of this Court's jurisdiction,' we have held that we are authorized to answer certified questions as part of our inherent judicial power under [a]rticle VI, section 1 of the state's Constitution." *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010) (quoting *Haley*, 188 S.W.3d at 522) (footnote omitted). "Rule 23 permits consideration of questions of law only, not questions of fact or controversies as a whole." *Id.* "Issues of statutory construction are questions of law." *Id.* at 242. We review de novo all of the questions of law presented herein. *Shorts v. Bartholomew*, 278 S.W.3d 268, 274 (Tenn. 2009).

**Question 1**

The first certified question asks whether a repairman's lien arising under Tennessee Code Annotated section 66-19-101 may be enforced by a method other than attachment of the lien-subject property itself. As explained below, we respond to this question by interpreting another Tennessee statute, Tennessee Code Annotated section 66-21-101, which applies to enforcement of statutory liens.

As we have stated, Embraer's Lien on the Aircraft arises under section 66-19-101, which provides:

> There shall be a lien upon any type of conveyance used in the transportation of persons or merchandise either by land or by water or through the air, propelled by any sort of power, for any repairs or improvements made or parts or fixtures furnished at the request of the owner, or the owner's agent, in favor of the mechanic, contractor, founder, or machinist who makes on any such vehicle mentioned any repairs or puts thereon any improvements, fixtures, machinery, or materials; . . . .

Tenn. Code Ann. § 66-19-101. For our purposes, AeroCentury does not dispute the validity of Embraer's Lien on the Aircraft and there is no dispute regarding the interpretation of section 66-19-101. As recognized by the District Court, the dispute stems from Embraer's efforts to enforce its Lien. Because section 66-19-101 does not specify a method for enforcing the Lien, we turn to Tennessee Code Annotated section 66-21-101:

> Any and all liens given by statute on personal property, except attorney's lien, where no method of enforcing the same is specifically prescribed by statute, *may* be enforced by original attachment issued by any court having jurisdiction of the amount claimed to be due without necessity of fiat, on affidavit that the debt is due and unpaid, to be levied on the property upon which the lien exists, be it either in the hands of the creditor, owner, or other party not an innocent purchaser.

Tenn. Code Ann. § 66-21-101 (emphasis added). Thus, section 66-21-101 addresses situations such as the instant case, in which a party has a statutory lien but the lien statute does not specify the method by which the lien must be enforced.

Noting that section 66-21-101 uses the permissive "may" in addressing enforcement of a lien by original attachment, the District Court stated that "it is not clear

- 6 -

that Tennessee courts recognize methods *other* than attachment of the lien-subject property for the enforcement of a lien that arises under Tennessee law." Embraer contends that, although section 66-21-101 permits original attachment of the lien-subject property, original attachment is not the exclusive method or remedy for a repairman to enforce a lien created by section 66-19-101, as this remedy is only "permitted" and not required by section 66-21-101. Embraer asserts that, if Tennessee's General Assembly had intended for original attachment to be the exclusive method to enforce the repairman's lien arising under section 66-19-101, it would have used language similar to that found in Tennessee Code Annotated section 66-11-126, which provides that mechanics' and materialmen's liens "shall be enforced only by the filing of an action seeking the issuance of an attachment . . . ." Tenn. Code Ann. § 66-11-126 (2015). However, Embraer points to no other Tennessee statute indicating how a repairman's lien might otherwise be enforced. Rather, it contends that "where there is a right, there is a remedy," and that the District Court, having *in personam* jurisdiction over AeroCentury, should have the authority "to fashion a remedy to enforce those rights in an *in personam* action."

As noted above, we are not addressing the entire controversy between these parties; our opinion is limited to the question of law certified by the District Court. *Seals*, 301 S.W.3d at 241. Moreover, under Rule 23, we limit ourselves to defined questions of Tennessee law for which "there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. Therefore, in responding to this first certified question, we limit ourselves to interpreting section 66-21-101, which addresses enforcement of a lien for which there is no specified method of enforcement, such as a lien arising under section 66-19-101.

In construing section 66-21-101, "we 'must first ascertain and then give full effect to the General Assembly's intent and purpose' in drafting [that statute]." *Seals*, 301 S.W.3d at 242 (quoting *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008)). "Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute." *Id.* "We must construe statutes as we find them, and therefore, our search for a statute's meaning and purpose must begin with the words of the statute." *Waldschmidt*, 271 S.W.3d at 176 (citation omitted). "We must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended that each word be given full effect." *Id.* "Unless the statute is ambiguous, legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)).

"When a lien comes into existence by force of a statute, it must be measured by the statute, and can have no greater force than the statute gives it." *Rent-A-Car Co. v. Belford*, 45 S.W.2d 49, 51 (Tenn. 1932) (quoting *Parker-Harris Co. v. Tate*, 188 S.W. 54, 56 (Tenn. 1916)); *see also* Keith Meyer, *II. Should the Unique Treatment of Agricultural Liens Continue?*, 24 Ind. L. Rev. 1315, 1319 (1991) ("Federal and state statutory liens exist with their own unique requirements for creation, perfection, and enforcement."). Addressing the predecessor to Tennessee Code Annotated section 66-21-101, Shannon's Tennessee Code, section 5330,[6] our Court of Appeals observed: "The method provided for the enforcement of all statutory liens, on personal property, where no method of enforcing the same is provided by the statute creating the lien, is by original attachment." *Potter v. Foster*, 64 S.W.2d 520, 522 (Tenn. Ct. App. 1932). The Court of Appeals added:

> The court has jurisdiction in the absence of actual seizure if the court has control over the *res*. If a party who has the actual possession of the *res* is before the court, then the *res* is within the power of the court, for it can compel the party to deliver the possession to an officer of the court. So, so long as the court has the control of the *res* it can exercise jurisdiction and enforce a lien against the chattel. But of course if the court loses control over the *res* pending the suit, it can thereafter make no valid order in reference to the *res*.

*Id.* at 523 (citation omitted).

Focusing on the statute's plain language, the only remedy provided for in section 66-21-101 is attachment of the lien-subject property—here, the Aircraft. As Embraer conceded at oral argument, the Lien arising under section 66-19-101 follows the property and there is no section 66-19-101 statutory lien on the proceeds resulting from the sale of the Aircraft. Section 66-21-101, by its plain language, addresses only enforcement of a lien. As Embraer has no section 66-19-101 lien on the proceeds from AeroCentury's sale

---

[6] Section 5330 provided:

> Any and all liens given by statute in this state, on personal property, where no method of enforcing the same is prescribed by statute law, may be enforced by original attachment issued by any justice of the peace or court having jurisdiction of the amount claimed to be due, on affidavit that the debt is due and unpaid, to be levied on the property upon which the lien exists, be it either in the hands of the creditor, owner, or other party not an innocent purchaser.

Shannon's Tennessee Code, § 5330 (1918).

of the Aircraft, section 66-21-101 provides no remedy for Embraer to reach the proceeds.[7]

In its order, the District Court commented that use of the permissive "may" in section 66-21-101 made it unclear whether Tennessee courts recognize methods for enforcing a statutory lien like the one in this case other than by attachment of the lien-subject property. Section 66-21-101 states that statutory liens on personal property, where the statute does not specify a method of enforcement, "*may* be enforced by original attachment" issued by any court with jurisdiction, upon appropriate affidavit that the debt is due and unpaid. Tenn. Code Ann. § 66-21-101 (emphasis added). In this context, the use of the word "may" indicates only that the creditor "may," or may not, choose to collect the debt by attaching the lien-subject property.

Simply put, section 66-21-101 states only that a statutory lien on personal property, where the lien statute does not specify a method of enforcement, may be enforced by original attachment of the lien-subject property itself. It does not address how a creditor might reach the proceeds from the sale of the lien-subject property, and it does not indicate whether there are other remedies possibly available to the creditor who holds the statutory lien.

**Question 2**

The second question certified by the District Court is: "Under what circumstances, if any, may a court attach the proceeds of the sale of lien-subject property, or otherwise reach them with a judgment, where the owner of the property has rendered the attachment of the lien-subject property impracticable or impossible after the initiation of a foreclosure proceeding?"

In connection with this question, Embraer cites several Tennessee cases to illustrate other methods by which it might reach the proceeds of AeroCentury's sale of the Aircraft. For example, *Rent-A-Car Co. v. Belford*, 45 S.W.2d 49 (Tenn. 1932), involved a trial court's award against the owner of lien-subject property for the value of the property after its owner sold the lien-subject property to an innocent purchaser. Embraer also cites *Sadler v. Murphy*, 77 S.W.2d 70 (Tenn. Ct. App. 1934), which involves ancillary attachment, that is, attachment sought in aid of a suit in which the court has jurisdiction over the defendant on a ground other than the pleaded-for attachment.

---

[7] Section 66-21-101 is of course not limited to liens that arise under section 66-19-101, but the parties have not brought to our attention any other statute by which Embraer may acquire a lien on the proceeds from AeroCentury's sale of the Aircraft. We express no opinion on whether a lien may arise on the proceeds under any other statute.

*See Smith v. Foster*, 43 Tenn. 139, 145-46 (1866); *Walker v. Cottrell*, 65 Tenn. 257, 267 (1873).

As noted above, section 66-21-101 does not address other remedies that might be available to Embraer under the circumstances of this case. Statutory liens are intended to supplement—not supplant—common law remedies for collecting debt. *See e.g.*, *Allen v. Simmons Mach. Co.*, 666 S.W.2d 44, 47 (Tenn. 1984) (trial court was correct in finding conversion where defendant repossessed chattel, sold it out-of-state, and thereby either destroyed plaintiff's lien, or made repossession and sale by appellants impracticable; defendant acted with actual knowledge of plaintiff's prior recorded security interest and in spite of the fact that a suit was pending to determine priority of security interests); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 835 (Tenn. Ct. App. 1977) (discussing the validity of and prerequisites to a suit for conversion brought by the holder of a security interest in tobacco crops against a merchant who sold the crops for the plaintiff's debtor and paid the proceeds to plaintiff's debtor).

Nevertheless, we must respectfully decline to address the cases cited by Embraer or the merits of this second question certified by the District Court. As noted above, under Rule 23, we limit ourselves to defined questions of Tennessee law for which "there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. Rather than a defined question of unsettled Tennessee law, the second question is more in the nature of an open-ended inquiry as to any methods by which Embraer may reach the proceeds of AeroCentury's sale of the Aircraft. There are ample Tennessee Supreme Court decisions regarding various methods that may be available to Embraer under the circumstances of this case. Accordingly, we must conclude that this is not a suitable question for the Court to address under Rule 23. Consequently, we respectfully decline to address the merits of the second certified question.

## CONCLUSION

As to the first question certified by the District Court, the only remedy provided for in Tennessee Code Annotated section 66-21-101 is original attachment of lien-subject property. Embraer concedes that it has no section 66-19-101 statutory lien on the proceeds of AeroCentury's sale of the Aircraft. Section 66-21-101, by its plain language, addresses only enforcement of a lien. Accordingly, section 66-21-101 provides no remedy for Embraer to reach the proceeds from AeroCentury's sale of the lien-subject Aircraft. However, section 66-21-101 does not foreclose other statutory or common-law remedies that may be available to Embraer. As to the second question certified by the District Court, we conclude that it does not state a defined question of unsettled Tennessee law, but it is essentially an open-ended inquiry regarding possible methods by

which Embraer might reach the proceeds from AeroCentury's sale of the lien-subject Aircraft. As such, the second question is not suitable under Tennessee Supreme Court Rule 23 and we respectfully decline to address the merits of the question.

The Clerk is directed to transmit a copy of this opinion to the United States District Court for the Middle District of Tennessee in accordance with Tennessee Supreme Court Rule 23, section 8. Costs in this Court are taxed one-half to Embraer Aircraft Maintenance Services, Inc., and one-half to AeroCentury Corp.

_____
HOLLY KIRBY, JUSTICE