IN THE SUPREME COURT OF TENNESSEE
Assigned on Briefs February 24, 2021

## AFFORDABLE CONSTRUCTION SERVICES, INC. ET AL. v. AUTO-OWNERS INSURANCE COMPANY ET AL.

**Rule 23 Certified Question of Law
from the United States District Court
for the Western District of Tennessee
No. 1:20-cv-01016-STA-jay    S. Thomas Anderson, Judge**

_____

### No. M2020-01417-SC-R23-CV

_____

Tennessee Code Annotated section 56-7-111 provides that when an insured property owner's home or other structure sustains more than $1,000 in damages, the property or casualty insurance company shall name the general contractor of an uncompleted construction contract as a payee when issuing payment to the owner for the loss. Here, an insurance company issued a check to the insured owner but did not name the general contractor as a payee. The general contractor sued the insurance company, alleging noncompliance with section 56-7-111. We accepted three certified questions of law from the United States District Court for the Western District of Tennessee, one of which requires us to determine whether a general contractor has a private right of action against an insurance company for violating section 56-7-111. We hold that section 56-7-111 does not expressly grant a private right of action to the general contractor, and the general contractor failed to prove that the legislature intended to imply a private right of action. Thus, the general contractor has no right to sue the insurance company for noncompliance with section 56-7-111.

**Rule 23 Certified Question of Law from the United States District Court for the Western District of Tennessee, No. 1:20-cv-01016-STA-jay, S. Thomas Anderson, Judge**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Randall N. Songstad, Memphis, Tennessee, for the petitioner, Affordable Construction Services, Inc.

Bradford D. Box and Michael L. Mansfield, Jackson, Tennessee, for the respondent, Owners Insurance Company.

**OPINION**

**I.**

Grand Valley Lakes Property Owners Association, Inc. owned property on Grand Valley Drive in Saulsbury, Tennessee. Owners Insurance Company[1] issued a property and casualty insurance policy on the property. A severe weather event damaged the property, and the Association hired Affordable Construction Services, Inc. to make repairs. Three lawsuits were filed involving payment of insurance proceeds.[2]

The first lawsuit was filed by the Association against the Insurance Company to collect the Association's claim for property damages. *See Grand Valley Lakes Prop. Owners Assoc., Inc. v. Owners Ins. Co.*, No. 16-cv-01322-JDB-egb (W.D. Tenn.). The parties settled their dispute, and the Insurance Company issued a check payable only to the Association.

In the second lawsuit, Affordable Construction sued the Association and the Insurance Company in the Hardeman County Circuit Court to recover payment for repairs Affordable Construction made to the insured property. Affordable Construction later voluntarily dismissed the Insurance Company as a defendant. The circuit court then dismissed the case against the Association, finding there was no enforceable contract between Affordable Construction and the Association for the repairs.

Finally, Affordable Construction sued the Insurance Company in the Hardeman County Chancery Court seeking a declaratory judgment. Affordable Construction claimed that the Insurance Company violated Tennessee Code Annotated section 56-7-111 by not naming Affordable Construction as a payee on the insurance proceeds check to the Association.

The case was removed to the United States District Court for the Western District of Tennessee[3] based on diversity of citizenship.[4] The Insurance Company moved for

---

[1] According to Owners Insurance Company, Affordable Construction improperly named Owners Insurance Company as Auto-Owners Insurance Company in the complaint.

[2] We rely on the certification order of the United States District Court for the Western District of Tennessee for the facts and procedural history.

[3] After removal to federal court, Owners Insurance Company filed a third-party complaint against the Association. The Association did not file a brief in this Court.

[4] A federal district court has jurisdiction over a case based on diversity of citizenship when the parties are citizens of different states and the amount in controversy is more than $75,000. 28 U.S.C. § 1332(a)(1). If diversity jurisdiction exists, a defendant may remove a case originally filed in state court

judgment on the pleadings, arguing, in part, that Affordable Construction had no private right of action against the Insurance Company under section 56-7-111. Even if Affordable Construction had a private right of action, the Insurance Company asserted that Affordable Construction did not have to be included as a payee on the check because there was no contract between Affordable Construction and the Association. The federal district court ruled that Affordable Construction was collaterally estopped from relitigating whether it had a contract with the Association. The parties disputed whether a contract between the parties was required under section 56-7-111. Because Tennessee substantive law applies in an action based on diversity[5] and there was no Tennessee appellate court decision interpreting section 56-7-111, the federal district court certified three questions of state law to this Court under Tennessee Supreme Court Rule 23:

(1) Does [Tennessee Code Annotated section] 56-7-111 provide for a private right of action?
(2) In order for an insurance company to be obligated to name a general contractor as a payee on the check that it writes to its insured under [section] 56-7-111, must there have been a contract between the general contractor and the insured?
(3) If a contract between the general contractor and the insured is required in order for the statute to apply, must that contract be uncompleted at the time the check is written?

## II.

Our authority to answer these questions of law from the federal district court comes from Tennessee Supreme Court Rule 23.[6] Under this Rule, we "may 'accept and answer a question of state law certified . . . by the federal court to assist the federal court in deciding a question of state law.'" *Embraer Aircraft Maint. Servs., Inc. v. Aerocentury Corp.*, 538 S.W.3d 404, 409 (Tenn. 2017) (quoting *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 803 (Tenn. 2015)). When answering certified questions, this Court considers only questions of law, not questions of fact. *Id.* (quoting *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010)).

---

to the federal district court whose district includes the location of the state court where the suit was filed. 28 U.S.C. § 1441(a).

[5] *Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016).

[6] The Supreme Court may, at its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee . . . . This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Tenn. Sup. Ct. R. 23, § 1.

The primary issue we must resolve is whether section 56-7-111 provides for a private right of action. A private right of action allows a person to sue to remedy a wrong or prevent a wrong caused by another party's violation or threatened violation of a statute. *See Hardy v. Tournament Players Club, Inc.*, 513 S.W.3d 427, 433 (Tenn. 2017). It is the exclusive province of the legislature—not the courts—to create a statutory private right of action. *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) (citing *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998); *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 689 (Tenn. Ct. App. 1999)). To bring a cause of action to enforce a statutory duty, the plaintiff must show that the legislature intended for a private right of action to exist. *Hardy*, 513 S.W.3d at 434. Whether the legislature provided for a private right of action in section 56-7-111 is a question of law requiring statutory construction. *Brown*, 328 S.W.3d at 855 (citing *Premium Finance*, 978 S.W.2d at 93); *Embraer Aircraft*, 538 S.W.3d at 409 (quoting *Seals*, 301 S.W.3d at 242). When construing a statute, "[o]ur chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute." *Embraer Aircraft*, 538 S.W.3d at 410 (quoting *Seals*, 301 S.W.3d at 242).

A court can find that the legislature created a private right of action in one of two ways: based on the express terms of a statute or by implication through the statute's structure and legislative history. *Brown*, 328 S.W.3d at 855; *Premium Finance*, 978 S.W.2d at 93. We begin with the language of section 56-7-111 to determine whether it grants Affordable Construction an express private right of action against the Insurance Company:

> When insured property losses in excess of one thousand dollars ($1,000) accrue to the owners of dwellings or other structures insured under policies of property or casualty insurance . . ., the insurance company shall name the general contractor . . . of any uncompleted construction or building contract as a payee on the draft to the owner covering payment for the loss. The insurance company shall name the general contractor as payee on the draft pursuant to this section regardless of whether the work that was performed or is yet to be performed is less than twenty-five thousand dollars ($25,000).

Tenn. Code Ann. § 56-7-111 (2016).

Section 56-7-111 does not expressly create a private right of action. Thus, we must determine whether the legislature intended to imply a private right of action. *See Brown*, 328 S.W.3d at 855 (citing *Premium Finance*, 978 S.W.2d at 93; *Reed*, 4 S.W.3d at 689). We do this by examining the statute's structure and legislative history, assisted by the framework this Court set forth in *Brown*. *See id.*

In *Brown*, the plaintiffs filed a putative class action lawsuit against a title pledge lender under the Tennessee Title Pledge Act, Tennessee Code Annotated sections 45-15-101 to -120. 328 S.W.3d at 853. The title pledge lender had loaned money to the

- 4 -

plaintiffs and taken possession of the plaintiffs' motor vehicle certificates of title to secure the loans. *Id.* According to the plaintiffs, the lender violated the Act by charging unauthorized fees and more interest than allowed by the Act. *Id.* The trial court dismissed the case, finding the Act provided no private right of action to the plaintiffs. *Id.* at 854. The Court of Appeals granted an interlocutory appeal and reversed the trial court's judgment, holding that the Act provided a private right of action. *Id.*

Upon our review, the parties in *Brown* did not argue that the Act expressly created a private right of action. Thus, we focused on whether the plaintiffs had proven that there was a legislatively implied private right of action based on the statutory structure and its legislative history. *Id.* at 855. The Court considered these factors in determining whether there was an implied private right of action:

(1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute,

(2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and

(3) whether implying such a remedy is consistent with the underlying purposes of the legislation.

*Id.*[7]

Federal and state courts have relied on these factors when determining whether there is an implied private right of action under a statute. *See Hamilton Cnty. Emergency Commc'ns Dist. v. BellSouth Telecomms. LLC*, 852 F.3d 521, 528–31 (6th Cir. 2017) (finding the plaintiffs had an implied private right of action when they were intended beneficiaries of the statute, there was no "compelling indication" of legislative intent, and the statute had no mechanism for governmental enforcement); *Ingram v. Tenn. Dep't. of Lab. & Workforce Dev.*, No. 3:12-cv-01106, 2013 WL 1965130, *6–8 (M.D. Tenn. May 10, 2013) (finding implied private right of action when the plaintiff was an intended beneficiary of the statute, there was no evidence of legislative intent, and a private right of action was the only way to enforce the statutory protections afforded to the plaintiff); *City of Arvada ex rel. Arvada Police Dep't. v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 614–15 (Colo. 2017); *Alaka'i Na Keiki, Inc. v. Matayoshi*, 277 P.3d 988, 1010 (Haw. 2012); *Estate of McFarlin v. State*, 881 N.W.2d 51, 57–58 (Iowa 2016) (adding as a fourth factor whether finding an implied private right of action would intrude on the exclusive jurisdiction of the federal government or a state agency); *Fangman v. Genuine Title, LLC*, 136 A.3d 772, 779 (Md. 2016); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 463 (N.Y. 1983); *Vogel v. Marathon Oil Co.*, 879 N.W.2d 471, 476–77 (N.D. 2016); *Miami Valley Hosp. v. Combs*, 695 N.E.2d 308, 311 (Ohio Ct. App. 1997); *Estate*

---

[7] The Court also noted that *Cort v. Ash*, 422 U.S. 66 (1975) included a fourth factor involving whether the cause of action was traditionally relegated to state law. This factor does not apply when interpreting state statutes. *Brown*, 328 S.W.3d at 855 n.4.

*of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999); *Keodalah v. Allstate Ins. Co.*, 449 P.3d 1040, 1045–46 (Wash. 2019).

In *Brown*, the Court first examined the overall statutory scheme, noting that the legislature's stated purposes for the Act were "regulatory and penal in nature." 328 S.W.3d at 856. Among other things, the Act capped the interest and fees lenders could charge and provided for enforcement only through criminal and administrative penalties. *Id.* at 857. To this point, the Court, quoting *Premium Finance*, said: "[w]here an act as a whole provides for governmental enforcement of its provisions, we will not casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear." *Id.* (alteration in original) (quoting *Premium Finance*, 978 S.W.2d at 94).

The Court then considered the first of the three factors, finding that the legislature intended for the plaintiffs to benefit from the Act's caps on interest and fees. *Id.* at 858. But the inquiry did not end there because satisfaction of the first factor is not sufficient to imply a private right of action. *Id.* (citing *Ellison v. Cocke Cnty.*, 63 F.3d 467, 470 (6th Cir. 1995); *Reed*, 4 S.W.3d at 689–90).

As to the second factor, the Court considered whether the plaintiffs had proven that there was any express or implied indication of a legislative intent to create or deny a private right of action. *Id.* Nothing in the legislative history supported the plaintiffs' claim of a private right of action. *Id.* According to statements on the Senate floor, the cap on fees resulted from district attorneys general who had threatened to prosecute title pledge lenders for price gouging if they did not "clean up their act." *Id.* Although legislative inaction is generally not a relevant consideration, legislative nonaction is relevant when the legislature repeatedly rejects a proposal for change. *Id.* The defendant lender showed that eight bills had been introduced to amend the Act to expressly allow for a private right of action. None were enacted. *Id.* at 858–59. Thus, the Court found that there was no indication of legislative intent to create a private right of action under the Act. *Id.* at 859.

Under the third factor, the Court had to determine whether the plaintiffs had proven that a private right of action was consistent with the Act's purpose—to regulate title pledge lenders, mainly through licensure. *Id.* at 859. Enforcement of the Act was by governmental action through criminal and administrative remedies. *Id.* Courts have generally declined to imply a private right of action when regulatory statutes are enforced by governmental remedies. *Id.* at 860. *See also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *Premium Finance*, 978 S.W.2d at 94 (holding there was no private right of action under a regulatory statute governing the premium finance industry where enforcement was through criminal and administrative penalties); *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002) (finding no private right of action under a statute regulating the safety of glass used in motor vehicles because the statute provided only for

an administrative remedy); *Reed*, 4 S.W.3d at 689–90 (holding an employee had no private right of action under Tennessee workers' compensation law because although the employee was an intended beneficiary, enforcement was through administrative penalties for violations). Thus, the Court ruled that the plaintiffs had not met their burden of proving that the legislature intended to create an implied private right of action under the Act. *Brown*, 328 S.W.3d at 863.

Following *Brown*, the Court considered in *Hardy* whether Tennessee's Tip Statute, Tennessee Code Annotated section 50-2-107, allowed a server at a private dining club to bring a class action against her employer for violating the Tip Statute. 513 S.W.3d at 429–30. Under this statute, employers had to distribute customers' tips, gratuities, and service charges to the employees who served those customers. *Id.* at 437. Violation of the statute was a Class C misdemeanor. *Id.* The server claimed that her employer violated the Tip Statute by paying part of the tips and other charges to non-servers, including kitchen staff and salaried management. *Id.* at 430–31. After considering the Tip Statute's structure, legislative history, and the *Brown* factors, the Court ruled that the plaintiff had no private right of action against her employer under the Tip Statute. *Id.* at 446. Even though the plaintiff was an intended beneficiary of the Tip Statute, she failed to show that the legislature intended to create a private right of action and that a private right of action aligned with the purposes of the Tip Statute. *Id.* at 439–41.

Here, against the backdrop of *Brown* and *Hardy*, we review section 56-7-111, considering its statutory structure, legislative history, and the *Brown* factors in determining whether the legislature intended to imply a private right of action. *Brown*, 328 S.W.3d at 855. Like the statute at issue in *Hardy*, section 56-7-111 is not part of "a comprehensive Act or regulatory scheme," 513 S.W.3d at 437, but is part of Title 56 of the Tennessee Code, which broadly regulates the insurance industry. Thus, we look at section 56-7-111 "in evaluating statutory language, structure and legislative history." *Id.* at 437–38.[8]

First, Affordable Construction had to show that it was an intended beneficiary of section 56-7-111. Affordable Construction satisfied this factor. A general contractor, not an insurance company or an insured owner, stood to benefit from a requirement that an insurance company name the general contractor, along with the owner, on an insurance proceeds check. The practical effect of this requirement is that a general contractor would have to endorse the insurance proceeds check before the owner could cash or deposit the check. Presumably, a general contractor would not endorse a check without receiving payment for work performed. Representative Jack Bowman, who introduced the House

---

[8] As part of this broad regulatory title, a violation of section 56-7-111 is governed by section 56-1-801, which provides that "[a] violation of this chapter and chapters 2-4, 7, 11 and 32 of this title, the penalty of which is not specifically provided, is a Class C misdemeanor." Tenn. Code Ann. § 56-1-801 (2016).

Bill that would later be enacted as section 56-7-111,[9] stated that the purpose of requiring the inclusion of the general contractor as a payee on the insurance proceeds check was to make sure there would be "no hold up [in] payment" to the general contractor for repairs. *Hearing on H.B. 1989*, 88th Gen. Assemb., Reg. Sess. 2 (Tenn. Mar. 29, 1974) (statement of Rep. Bowman) (available through the Tennessee State Library and Archives audio recordings).

Second, Affordable Construction had to show an indication of express or implied legislative intent to create a private right of action. *See Brown*, 328 S.W.3d at 858. Affordable Construction failed to do so. While the legislature aimed to avoid a "hold up" of payment to a general contractor, there is nothing, express or implied, in the statutory scheme or legislative history indicating that the legislature envisioned contractors filing suit under the statute. Arguably, adding a civil remedy could have put more "teeth" in section 56-7-111 and better protected general contractors—but that is not our call. It is the role of the legislature, not the courts, to create a statutory private right of action.

Finally, Affordable Construction had to show that an implied private right of action would be consistent with the statute's purposes. *Brown*, 328 S.W.3d at 859. Affordable Construction failed to carry its burden on this factor. The legislature intended for section 56-7-111 to avoid a delay in payments to contractors but did not include a specific penalty for noncompliance. When the legislature provides no specific penalty, under Tennessee Code Annotated section 56-1-801, a violation of chapters 2–4, 7, 11, and 32 of Title 56 is a Class C misdemeanor. Section 56-7-111 falls under chapter 7, so a party who violates this section may be guilty of a misdemeanor. Thus, section 56-7-111 is a "regulatory statute enforced through governmental remedies" like the statutes in *Brown*, *Hardy*, *Petty*, and *Reed*. *See Brown*, 328 S.W.3d at 861; *Hardy*, 513 S.W.3d at 440–41. As we concluded in *Brown*, "the implication of a private right of action would be inconsistent with the [statute's] purposes as set forth by the legislature." 328 S.W.3d at 861.

In sum, Affordable Construction failed to carry its burden of proof that the legislature intended to create an implied private right of action on behalf of a general contractor under section 56-7-111.

## CONCLUSION

Tennessee Code Annotated section 56-7-111 provides no express private right of action to a general contractor against an insurance company for failure to include the contractor as a payee on an insurance proceeds check to an insured. After considering the statutory structure and legislative history of section 56-7-111, along with the *Brown* factors, we hold that Affordable Construction had no private right of action against the Insurance Company. Thus, our answer to the federal court's first certified question is:

---

[9] Representative Bowman also explained that the bill (S.B. 1763) had passed in the Tennessee Senate on its consent calendar without opposition.

Tennessee Code Annotated section 56-7-111 does not provide for a private right of action. Our holding resolves the first certified question of law, and we need not answer the second and third certified questions.

In accordance with Tennessee Supreme Court Rule 23, section 8, we direct the Appellate Court Clerk to send a copy of this opinion to the United States District Court for the Western District of Tennessee. Costs are assessed one-half to Affordable Construction Services, Inc. and one-half to Owners Insurance Company, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE