IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 2, 2018 Session

## JACOB DAVIS v. TENNESSEE DEPARTMENT OF CORRECTION ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-857-I      Claudia Bonnyman, Chancellor**

_____

### No. M2017-02301-COA-R3-CV

_____

Having pursued relief under the Uniform Administrative Procedures Act, Jacob Davis filed a petition for a declaratory order with the Tennessee Department of Correction ("TDOC" or "the Department") to challenge the Department's interpretation of the statutes regarding release after a sentence of life, and the constitutionality of Tenn. Code Ann. § 40-35-501(i). Upon receiving an unsatisfactory response, Davis then filed a declaratory judgment action in the Davidson County Chancery Court against the TDOC and the Tennessee Attorney General (collectively, "the State") about the calculation of his sentence, including his eligibility for release and the constitutionality of Tenn. Code Ann. § 40-35-501. The chancery court ruled against him and he appealed. The Court of Appeals finds, based on rules of statutory interpretation, *Vaughn v. State*, 202 S.W.3d 106 (Tenn. 2006), and a number of cases from the Court of Criminal Appeals, that Tenn. Code Ann. § 40-35-501(i) establishes the legal release date for someone sentenced to life. The court also finds that the statute is constitutional.  The chancery court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Jennifer L. Weaver, Nashville, Tennessee, and David Herrington, Martine B. Forneret, and Margot Gianis Mooney, New York, New York, for the appellant, Jacob Davis.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Stephanie Renee Reevers, Deputy Attorney General, and Charlotte Montiel Davis, Assistant Attorney General, for the appellees, Tennessee Department of Correction and State Attorney General.

**OPINION**

Jacob Davis was a straight "A" student. He had no history of criminal conduct. Yet, shortly after turning 18 years old, Davis fatally shot another student at school who had had sexual relations with his girlfriend.[1] A jury convicted him of first degree murder, reckless endangerment, and carrying a weapon on school property. *State v. Davis*, No. M1999-02496-CCA-R3-CD, 2001 WL 487688, *1 (Tenn. Crim. App. May 8, 2001). "The trial court sentenced him to life imprisonment for the first degree murder conviction and one year each for the reckless endangerment and carrying a weapon on school property convictions. The trial court ordered that the latter sentences be served concurrent to the sentence for life imprisonment." *Id*. The Court of Criminal Appeals affirmed his conviction. *Id*. Davis also filed an unsuccessful post-conviction petition. *Davis v. State*, No. M2003-00744-CCA-R3-PC, 2004 WL 253396, *1 (Tenn. Crim. App. Feb. 11, 2004).

Davis appears to have been a model prisoner. In prison, he has worked in the field of computer programming, enrolled at Lipscomb University's LIFE program, helped train service dogs to assist the disabled, and volunteered to speak to at-risk youth about his life and choices. Davis has received no write-ups during his incarceration for violent offenses or drugs and has not been affiliated with any gangs.

In January 2015, Davis asked the TDOC to recalculate his sentence and parole eligibility date. TDOC responded: "Effective 7-1-95, violent offences committed on or after 7-1-95 (your offence date is 5-19-99) and receive a life sentence must serve 60 years

---

[1] The Court of Criminal Appeals opinion affirming Davis's conviction described the shooting as follows:

> That afternoon [May 19, 1999], Allan Higgs was sitting in shop class (at approximately 1:45 p.m.) when he saw the Defendant back his car into a space in the parking lot by the athletic field house. The testimony at trial showed that Creson was a football player, and every day for the past three years, he had gone to the field house at 2:00 p.m. for seventh period practice. As the bell rang at 2:00 p.m. for seventh period, Nick Creson walked toward the field house. Because classes were changing, there were approximately 100-150 other students in the area surrounding Creson, including Brad Schrimsher, who was standing directly behind Creson. Cassandra Sharp testified that as she was walking to meet Creson (it was their custom to walk to seventh period together), she saw the Defendant step out of his car, raise a rifle to his chest, point it at Creson and fire a shot from a distance of approximately 30 to 40 feet. Creson fell to his knees, holding his books up as a shield and pleading with the Defendant to stop shooting. The Defendant moved closer and fired a second shot, which caused Creson to fall on his back. Defendant continued to approach and fired the third and final shot down into Creson's chest. After this final shot, the Defendant placed the gun down and sat down on the ground near Creson's body.

*State v. Davis*, No. M1999-02496-CCA-R3-CD), 2001 WL 487688, *3 (Tenn. Crim. App. May 8, 2001).

- 2 -

before Parole eligible, with credits, sentence can reduce to no less than 51 years. Your current RED[2] date is 3-28-2050."

Davis then filed a petition for a declaratory order with the TDOC to challenge the Department's interpretation of the statutes and the constitutionality of Tenn. Code Ann. § 40-35-501. In a fairly summary letter, the department denied the petition saying,

> The Department is required to obey the judgment orders as they are received from the court of jurisdiction, and we have. Any issue you may have, regarding your judgment orders, must be addressed with the court of jurisdiction.

> Judgment order in case # S9800087 (ct 1) sentences you to a life sentence and shows the date of your offense, of murder in the 1st degree, as May 19, 1998.

> See Tennessee Attorney General Opinion 97-098 for clarification in regards to release eligibility on a life sentence as provided for in T.C.A. § 40-35-501.[3]

> TOMIS shows that the Department is accounting for the prisoner sentence reduction credits that are being earned on a monthly basis.

> Therefore, the Department respectfully denies your petition.

Davis then filed a declaratory judgment action in the Davidson County Chancery Court against the State about the calculation of his sentence, including his eligibility for release and the constitutionality of Tenn. Code Ann. § 40-35-501. The TDOC filed a motion for summary judgment, which was granted. Davis appealed.

STANDARD OF REVIEW

The Tennessee Supreme Court has set out the standard of review for cases decided on summary judgment:

---

[2] Release Eligibility Date

[3] Tennessee Attorney General Opinion No. 97-098 (July 1, 1997) states that "under the amended Tenn. Code. Ann. § 40-35-501, the mandatory minimum period of confinement that must be served by those sentenced to life imprisonment is fifty-one years." Tennessee Attorney General Opinions are not binding on the courts. *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995). Tennessee government officials do rely on them, however, so they are "entitled to considerable deference." *Id*.

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." TENN. R. CIV. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. TENN. R. CIV. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Ctr. of Memphis, MPLLC.*, 477 S.W.3d 235, 264-65 (Tenn. 2015) (emphasis omitted). As the trial court observed, "Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone." *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002). "We review a trial

court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250.

ANALYSIS

Statutory Construction

Davis's first issue addresses whether the Department was correct in relying on Tenn. Code Ann. § 40-35-501(i) in calculating his sentence. Davis maintains that the Department should have applied Tenn. Code Ann. § 40-35-501(h)(1) and § 39-13-204(e)(2) instead. Tennessee Code Annotated section 39-13-204(e)(2) states:

> The trial judge shall provide the jury three (3) separate verdict forms, as specified by subdivisions (f)(1), (f)(2), and (g)(2)(B). The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

Tennessee Code Annotated section 40-35-501(h)(1) provides:

> Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.

Tennessee Code Annotated section 40-35-501(i) states, in pertinent part:

> (1) There shall be no release eligibility[4] for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person

---

[4] The parties in this and other cases regarding Tenn. Code Ann. § 40-35-501(i) often refer to parole and

shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

(2) The offenses to which subdivision (i)(1) applies are:

(A) Murder in the first degree; . . . .

In order to determine which statute governs, we use canons of statutory construction. These canons are not "laws" as such, but guidelines or rules courts use to interpret statutes. The most fundamental rule of statutory construction is that the court should ascertain and effectuate the intention of the legislature. *Rodriguez v. State*, 437 S.W.3d 450, 453 (Tenn. 2014). The understanding of a statute's intent begins with the words used in the statute. *Embraer Aircraft Maint. Servs., Inc. v. AeroCentury Corp.*, 538 S.W.3d 404, 410 (Tenn. 2017). Consequently, courts give the words of the statute their natural and ordinary meaning, study the statute's words in the light of the entire statute, and assume the legislature wanted each word of the statute to be given full effect. *Id*.

Reading each statute and giving each word its natural and ordinary meaning, we find that the statutes conflict as to the sentence of life in prison for the offense of murder in the first degree committed on or after July 1, 1995. Both Tenn. Code Ann. § 39-13-204(e)(2) and Tenn. Code Ann. § 40-35-501(h)(1), both enacted by 1993 Tenn. Pub. Acts, Ch. 473, contemplate that defendants sentenced to imprisonment for life serve a minimum of 25 years before they are even eligible for parole. On the other hand, Tenn. Code Ann. § 40-35-501(i), which was enacted by 1995 Tenn. Pub. Acts, Ch. 492 and did not take effect until July 1, 1995, envisions that the 60-year sentence for life in prison could not be reduced by more than 15% by sentence reduction credits, leading to a minimum imprisonment of 51 years.

The conflict regarding these statutes has been addressed several times. The first time it was addressed was in Tenn. Atty. Gen. Op. 97-098 (July 1, 1997). The Attorney General concluded that the statutes conflicted and that, to the extent of the conflict, the most recently enacted statute prevails. Thus, the Attorney General opined that "the

life with parole. This statute "provides the means for determining the sentence expiration date, and release is not contingent upon a grant of parole." *State v. Self*, No. E2014-02466-CCA-R3-CD, 2016 WL 4542412, *62 (Tenn. Crim. App. Aug. 29, 2016). The Court of Criminal Appeals has observed that "the term 'life with parole' is inaccurate because a life sentence entitles a defendant to release, not parole, after service of 100 percent of sixty years less any sentences credits, provided the credits do not reduce the sentence by more than fifteen percent, or nine years." *Id*. (citing *Williams v. State*, No. W2013-00555-CCA-R3-HC, 2013 WL 5493568, at *2 (Tenn. Crim. App. Sept. 30, 2013) *perm. app. denied* (Tenn. Dec. 10, 2013)).

mandatory minimum period of confinement that must be served by those sentenced to life imprisonment is fifty-one years." Tenn. Atty. Gen. Op. 97-098, at *1. Although Tennessee Attorney General opinions are not binding on the courts, *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995), they "are particularly persuasive when they have been consistently repeated." *H & R Block E. Tax Serv,. Inc. v. State Dep't. of Commerce & Ins.*, 267 S.W.3d 848, 861 (Tenn. Ct. App. 2008*). See also In re AAAA Bonding Co., LLC*, No. M2014-02157-CCA-R3-CD, 2016 WL 2621087, at *4 (May 5, 2016). As we will see below, Op. No. 97-098 has been cited repeatedly.

In *State v. Golden*, No. 02C01-9709-CR-00362, 1998 WL 518071, at *7 (Tenn. Crim. App, Aug. 21, 1998), the appellate court determined that "[a]lthough Tennessee Code Annotated § 39-13-204(e)(2) specifically requires that the jury be instructed as to service of 'at least twenty-five (25) full calendar years' before being eligible for parole consideration, this statutory calculation is erroneous." The Court of Criminal Appeals observed that, "[a]s noted by the State Attorney General, for crimes committed after July 1, 1995, minimum release eligibility for a life sentence is fifty-one (51) years and not twenty-five (25) years." *Golden*, 1998 WL 518071, at *7 (citing Tenn. Atty. Gen. Op. 97-098). The court said that the statutes were in conflict; but the legislature clearly "intended to change the minimum release eligibility date for a life sentence from twenty-five (25) years to fifty-one (51) years." *Id*. at *8. The case was remanded to the trial court for resentencing because of the erroneous instruction. *Id. See also Maine v. State*, No. E2004-00143-CCA-R3-PC, 2005 WL 1996631, at *1 n.1 (Tenn. Crim. App. Aug. 19, 2005) (citing *Golden*, 1998 WL 518071, and Tenn. Att'y Gen. Op. No. 97-098) (involving guilty pleas induced by false information that defendant would be eligible for release after serving 25 years of the life sentence); *State v. Milam*, No. 01C01-9712-CC-00557, 1999 WL 701419, at *5 (Tenn. Crim. App. Sept. 10, 1999) (involving erroneous jury instruction similar to *Golden*). *Golden* has been cited by the Court of Criminal Appeals in a case where a trial judge referred to the 25-year life sentence, and "[T]he State immediately brought to the attention of the court a 'recent State Attorney General's opinion that says a life sentence is fifty-one (51) years.'" *Jones v. State*, No. E2004-00240-CCA-R3-PC, 2004 WL 2900520, at *4, n.3 (Tenn. Crim. App. Dec. 15, 2004) (citing *Golden*, 1998 WL 518071, and Tenn. Att'y Gen. Op. 97-098).

In 2006, the Tennessee Supreme Court undertook to answer the same question presented in *Golden*: "were the petitioners denied effective assistance of counsel when trial counsel failed to object to an erroneous jury instruction regarding the release eligibility for a person convicted of first degree murder when there had been a recent change in the law." *Vaughn v. State*, 202 S.W.3d 106, 110 (Tenn. 2006). In *Vaughn v. State*, the Supreme Court observed:

> The trial court stated that if the jury found the defendant guilty of first
> degree murder, the trial court would impose a sentence of life in prison,
> which required the prisoner to serve a minimum of twenty-five years before

becoming eligible for parole. However, at the time of trial, the applicable statute provided that a person convicted of first degree murder and sentenced to life in prison must serve at least fifty-one years before becoming eligible for parole. No objection was made at either trial to the erroneous jury instruction.

*Id*. at 111. Thus, the Supreme Court stated that a sentence of life in prison was for a minimum of 51 years. *Id*. The court cited both Tenn. Code Ann. § 40-35-501(h)(1) and Tenn. Code Ann. § 40-35-501(i), noted the conflict, and referred to Tenn. Att'y Gen. Op. No. 97-098 as being based on "long established rules of statutory construction." *Id*. at 118. The Court concluded that, "[a]s for the conflict in the statutes, well-settled principles of statutory construction make it clear that the most recently enacted statute repeals by implication any irreconcilable provisions of the former act." *Id*. Because "trial counsel failed to apprise themselves of the correct release eligibility dates for the possible convictions and therefore failed to notice and object to the incorrect jury instruction [and] both likewise failed to raise the issue on direct appeal even after the conflict in language was clarified by the Attorney General," the Supreme Court held that their performance was deficient under the prevailing standards. *Id*. at 119. The Court further found that the attorneys' error prejudiced the defense and, accordingly, reversed the convictions and remanded for a new trials. *Id*. at 119-20. Upon reading *Vaughn*, one cannot doubt that the Tennessee Supreme Court determined that the controlling statute was Tenn. Code Ann. § 40-35-501(i).

Several cases have since visited this issue. In *Carney v. Barbee*, No. W2011-01977-CCA-R3-HC, 2012 WL 5355665 (Tenn. Crim. App. Oct. 31, 2012), the petitioner raised the conflicting provisions of subsections 40-35-501(h) and (i). The Court of Criminal Appeals made short work of that argument, citing and discussing *Vaughn* and Tenn. Att'y Gen. Op. 097-98. *Carney*, 2012 WL 5355665, at *3-4.

In *Draper v. Lindamood*, No. W2013-01030-CCA-R3-HC, 2014 WL 465723, at *1 (Tenn. Crim. App. Jan. 31, 2014) *perm. app. denied* (Tenn. June 20, 2014), the petitioner argued that the trial court did not have jurisdiction to sentence him to life with the possibility of parole. The Court of Criminal Appeals quoted Tenn. Code Ann. § 40-35-501(i) and explained:

> Although the court used the phrase "life sentence with the possibility of parole," instead of "life," to describe the petitioner's sentence under the plea, the court explained that such sentence was a mandatory sixty-year sentence with the potential that it could be reduced by as much as fifteen percent for good behavior, equating to a fifty-one-year sentence, but that such reduction was not guaranteed. The court's explanation was directly in line with the statute. In addition, an opinion by the Tennessee Attorney General submitted by the petitioner in support of his claim explains the

- 8 -

same thing and concludes that "the mandatory minimum percentage of a life term that must be served prior to becoming release eligible is 85% of sixty years, or fifty-one years." Op. Att'y Gen. No. 97–098 (July 1, 1997).

*Draper,* 2014 WL 465723, at *3.

In *State v. Guerrero*, No. M2014-01669-CCA-R3-CD, 2015 WL 2208546 (Tenn. Crim. App. May 11, 2015) *perm. app. denied* (Tenn. Sept. 17, 2015), the petitioner argued his sentence was illegal because his two life sentences, which required 100% service of sixty years' confinement less sentencing credits up to 15%, "were tantamount to life sentences without the eligibility or possibility of parole." *Guerrero*, 2015 WL 2208546 at *1. The Court of Criminal Appeals determined that

> A defendant convicted of first degree murder must serve 100% of a life imprisonment sentence, but a defendant is "'entitle[d] to release eligibility . . . after serving sixty years, the equivalent to a life sentence for the purpose of calculating release eligibility,'" less any sentence reduction credits up to 15%, or nine years. *Jerry D. Carney II v. Dwight Barbee, Warden*, No. W2011-01977-CCA-R3-HC, 2012 WL 5355665, at *4 (Tenn. Crim. App. Oct. 31, 2012) (quoting Tenn. Op. Att'y Gen. No. 97–098 (1997)); *see Vaughn*, 202 S.W.3d at 118-19. As a result, Tennessee statutes permit release from confinement for life imprisonment after serving fifty-one years. *See* T.C.A. § 40-35-501(h)(1), (i)(1), (i)(2)(A).
> . . .
>
> The life imprisonment sentences imposed do not entitle the Defendant to parole; however, Tennessee statutes permit release from confinement after serving fifty-one years. *See id*. § 40-35-501(i)(1). In comparison, defendants sentenced to life imprisonment without the possibility of parole are not eligible for release from confinement. *See id*. § 40-35-501(g). As a result, the life imprisonment sentences imposed by the trial court are not the equivalent to life imprisonment without the possibility of parole and are not in direct contravention of any statute.

*Id*. at *2-3 (emphasis omitted). *See also Blake v. State*, No. W2015-01423-CCA-R3-PC, 2016 WL 4060696, at *11 ( Tenn. Crim. App. July 27, 2016) *perm. app. denied* (Tenn. Nov. 22, 2016) (citing *Carney*, *Vaughn* and Tenn Att'y Gen. Op. 97-098); *Motley v. Lester*, No. W2014-00355-CCA-R3-HC, 2015 WL 847414, at *2 (Tenn. Crim. App. Jan. 30, 2015) *perm. app. denied* (Tenn. May 19, 2015).

Most recently, in *State v. Self*, No. E2014-02466-CCA-R3-CD, 2016 WL 4542412, at *61 (Tenn. Crim. App. Aug. 29, 2016) *perm. app. denied* (Tenn. Jan. 19, 2017), the defendant contended that he should have been sentenced under Tenn. Code Ann. § 40-35-501(h)(1). However, the Court of Criminal Appeals stated:

> Our supreme court had said that section 40-35-501(h)(1) applies to defendants whose life sentences were imposed for first degree murder offenses committed before July 1, 1995, and that section 40-35-501(i)(1) applies to defendants whose sentenced are for enumerated offenses committed on or after July 1, 1995. *Vaughn v. State*, 202 S.W.3d 106, 118 (Tenn. 2006); *see* Op. Tenn. Att'y Gen. 97-098 (1997).

*Self,* 2016 WL 4542412, at *61.

Statutory construction rules, the oft-repeated Tennessee Attorney General's Opinion, the Supreme Court's decision in *Vaughn* and a string of Court of Criminal Appeals decisions all resolve the conflict in favor of Tenn. Code Ann. § 40-35-501(i) controlling. We agree with these authorities.

Jurisdiction to Hear Constitutional Challenges

The State maintains that Davis's challenge to the constitutionality of Tenn. Code Ann. § 40-35-501(i) "amounts to a challenge to the validity of his criminal sentence, which cannot be reviewed by the chancery court under the UAPA." The case of *Rayner v. Tennessee Department of Correction*, No. M2017-00223-COA-R3-CV, 2017 WL 2984269, at *3 (Tenn. Ct. App. July 13, 2017) *perm. app. denied* (Tenn. Nov. 16, 2017), is cited for the proposition that "'declaratory proceedings under Tenn. Code Ann. § 4-5-225 . . . cannot be used to challenge the validity of a criminal conviction or sentence.'" *Id*. (quoting *Mitchell v. Campbell*, 88 S.W.3d 561, 565 (Tenn. Ct. App. 2002)). The State contends that, by challenging the constitutionality of the statute that governs his release eligibility, Davis is challenging the validity of his sentence.

Davis notes that the TDOC has the duty of calculating sentence expiration dates and release dates of felony offenders. Tenn. Code Ann. § 40-35-501(r).[5] Whether Tenn. Code Ann. § 40-35-501(h)(1) or Tenn. Code Ann. § 40-35-501(i) controls, Davis will still have been sentenced to life, *i.e.* 60 years. The issue is when he is eligible to get out of prison. Davis contends that the chancery court has jurisdiction to hear the

---

[5] Because the TDOC is responsible for calculating Davis's sentence expiration date, release eligibility claims are not properly considered in a direct appeal of the conviction. *Self*, 2016 WL 4542412, at *62 ("Because the Department of Correction is responsible for calculating his sentence expiration date, the issue was not properly before the trial court and, as a result, is not properly before this court. Challenges to the Department of Correction's determinations are subject to review under the Uniform Administrative Procedures Act.").

constitutional challenges to Tenn. Code Ann. § 40-35-501(i), citing the language of Tenn. Code Ann. § 4-5-223, and *Tolley v. Attorney General of Tennessee*, 402 S.W.3d 232 (Tenn. Ct. App. 2012).

Tennessee Code Annotated section 4-5-223(a) states: "Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Furthermore, Tenn. Code Ann. § 4-5-223(a) references Tenn. Code Ann. § 4-5-225, which provides that "[a] declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order."

When considering what constitutional issues an administrative agency may properly hear, we must begin with *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827 (Tenn. 2008). In that case, Colonial Pipeline Company filed a declaratory judgment action against the State, claiming that certain tax assessments against its pipeline were unconstitutional. *Colonial Pipeline*, 263 S.W.3d at 832. Unlike the instant case, Colonial Pipeline Company did not utilize the UAPA, even though it applied. *Id*. at 841. Rather, the company filed a declaratory judgment action in the chancery court. *Id*. at 835. In determining whether the company acted properly, the Supreme Court ruled:

> Administrative tribunals do not lack the authority to decide every constitutional issue. It is essential, however, to distinguish between the various types of constitutional issues that may arise in the administrative context. In *Richardson* [*v. Board of Dentistry*, 913 S.W.2d 446 (Tenn. 1995)], we developed three broad categories of constitutional disputes: (1) challenging the facial constitutionality of a statute authorizing an agency to act or rule, (2) challenging the agency's application of a statute or rule as unconstitutional, or (3) challenging the constitutionality of the procedure used by an agency. *Id*. at 454-55. Administrative tribunals have the power to decide constitutional issues falling into the second and third categories, but the first category falls exclusively within the ambit of the judicial branch. *Id*. The separation of powers clause reserves for the judiciary constitutional challenges to the facial validity of a statute. *Id*.

*Id*. at 843. A facial challenge to a statute involves "a claim 'that the statute fails a constitutional test and should be found invalid in all applications.'" *Jackson v. HCA Health Servs. of Tenn., Inc.*, 383 S.W.3d 497, 500 (Tenn. Ct. App. 2012) (quoting *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009)). Thus, if Davis's claims amount to a facial challenge, they cannot proceed through the UAPA. If his claims are "as applied" challenges, then they must proceed through the UAPA.

In *Tolley v. Attorney General of Tennessee*, 402 S.W.3d at 232, the Court of Appeals addressed the question of whether Tenn. Code Ann. § 40-35-501(i)(1) & (2)(a), regarding a prison inmate's release eligibility date, are unconstitutional as applied to life sentences. *Tolley*, 402 S.W.3d at 233. Pursuant to *Colonial Pipeline*, the court considered whether the constitutional challenge was facial or as applied. *Id*. at 236. The Court of Appeals concluded:

> Mr. Tolley does not argue that the statute is unconstitutional when applied to all sentences, but merely that it is unconstitutional as applied to life sentences. However, Tennessee Code Annotated Section 40-35-501(i) is not limited to only those offenses that carry a life sentence. *See* Tenn.Code Ann. § 40-35-501(i) (applying the provision at issue to several different offenses, including rape, aggravated rape, aggravated kidnapping, especially aggravated kidnapping, and aggravated arson). Therefore, Mr. Tolley has failed to show that "no set of circumstances exist under which the [statute] would be valid." *Lynch v. City of Jellico*, 205 S.W.3d at 390 (quoting *Davis-Kidd Booksellers*, 866 S.W.2d at 525). Based on the foregoing, we agree with the trial court that Mr. Tolley's Petition for Declaratory Judgment represents an "as applied challenge" to Tennessee Code Annotated Sections 40-35-501(i)(1) & (2)(a). As such, the trial court properly dismissed Mr. Tolley's petition for failure to exhaust administrative remedies.

*Tolley*, 402 S.W.3d at 237-38. The same would be true for Davis. Pursuant to the authority of *Tolley*, Davis's challenge is an "as applied" challenge and, therefore, proceeding through the UAPA is proper.

Vagueness

Davis's brief raises a rather unusual vagueness argument — that the conflicting statutes "would necessarily cause people of common intelligence to 'guess at the meaning of [the] statute and differ as to its application.'" Davis brief, at 39 (quoting *State v. Boyd*, 925 S.W.2d 237, 243 (Tenn. Crim. App. 1995)). As the federal court for the Eastern District of California observed earlier this year, "plaintiffs do not cite, and the court is unaware of, any case that has held an enactment to be void for vagueness because it conflicts with another enactment and it is not clear which enactment controls." *Wiese v. Becerra*, 306 F.Supp.3d 1190, 1200 (E.D. Cal. 2018). *See also Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999) (stating that conflicting statutes do not create a void for vagueness issue, but rather "create[] a question of implied repeal under Wisconsin law"). The cases Davis cites are not similar to Davis's claim. The California district court went on to explain that "the later-enacted version controls." *Wiese*, 306 F.Supp.3d at 1200. "It is not beyond the capacity of individuals with ordinary intelligence to look up the enactment dates" of the statutes. *Wiese v. Becerra*, 263 F.Supp.3d 986, 997 (E.D. Cal.

2017) (denying motion for preliminary injunction). "A statute is not vague 'which by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision.'" *State v. Burkhart*, 58 S.W.3d 694, 697 (Tenn. 2001) (quoting *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983). We also agree with the trial court that any question as to the proper interpretation of the statutes was resolved by *Vaughn*. To paraphrase *United States v. Culbert*, 435 U.S. 371, 379 (1978), we decline to manufacture vagueness where none exists.

Caption

The last sentence of Article II, Section 17 of the Tennessee Constitution states: "All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended." Because 1995 Tenn. Pub. Acts, Ch. 492 makes no reference to repealing Tenn. Code Ann. § 39-13-204(e)(2), Davis maintains that the interpretation of Tenn. Code Ann. § 40-35-501(i) to require a minimum of 51 years for a life sentence is unconstitutional.

The object of the last sentence of Article II, Sec. 17 is to "prevent improvident legislation, and to direct the attention of the members of the Legislature to the existing law, and the proposed change." *State ex rel. Hamby v. Gaines*, 69 Tenn. 734, 736 (1878). The words "or otherwise" refer to the preamble or body of the act. *Id*. Thus, both the body and the caption of the act may be examined to determine whether title or substance of the laws sought to be repealed, revived or amended are sufficiently identified. *House v. Creveling*, 250 S.W. 357, 360 (Tenn. 1923). The constitution is satisfied "where the caption or the body of the act taken as a whole and from a practical standpoint indicated the subject of legislation sought to be affected." *Heiskell v. City of Knoxville*, 189 S.W. 857, 859 (Tenn. 1916).

Looking at Ch. 492 "as a whole and from a practical standpoint," we conclude that any statute in place before the July 1, 1995 effective date of Ch. 492, with a release eligibility other than a minimum of 51 years for a life sentence is repealed as to offenses committed on or after July 1, 1995. The caption of Ch. 492 does not violate Article II, Section 17 of the Tennessee Constitution.

This is not an express repeal, but rather a repeal by implication. "[W]ell-settled principles of statutory construction make it clear that the most recently enacted statute repeals by implication any irreconcilable provisions of the former act." *Vaughn*, 202 S.W.3d at 118. Thus, both Tenn. Code Ann. § 40-35-501(h)(1) and § 39-13-204(e)(2) are repealed by implication to the extent they require a release eligibility other than a minimum of 51 years for a life sentence.

Furthermore, even if there was a problem with the caption of 1995 Tenn. Pub. Acts, Ch. 492, the 1996 codification bill would have cured it. *See State v. Chastain*, 871

- 13 -

S.W.2d 661, 666 (Tenn. 1994) ("codification of a legislative enactment cures all defects in the caption of the bill.") (citing *Harmon v. Angus R. Jessup Assos., Inc.*, 619 S.W.2d 522, 523 (Tenn. 1981)). *See also*1996 Tenn. Pub. Acts, Ch. 554, § 1.

Proportionality in Sentencing

Davis argues that a life sentence of 51 years destroys the distinction between life and life without parole "by taking a person sentenced to life and making it overwhelmingly likely that his fate will be the same as life without parole." In other words, Davis maintains that he is likely to die before he completes his 51 years, thus, he claims, likening his sentence to a sentence of life without parole -– a sentence the jury did not give him.

The cases Davis relies upon all deal with sentencing juveniles. Juveniles are different where sentencing is concerned.

> *Roper*,[6] *Graham*,[7] and *Miller*[8] directly settled a number of controversies. After these cases, it is clear that the Eighth Amendment prohibits the imposition of the death penalty for crimes committed by juvenile defendants, that life in prison without parole cannot be imposed on a juvenile nonhomicide offender, and that mandatory life without parole cannot be imposed on a juvenile who commits homicide without consideration of the mitigating characteristics of youth. All of these results rested on the notion that juveniles are constitutionally different from adults for purposes of the imposition of harsh punishments.

*State v. Null*, 836 N.W.2d 41, 66 (Iowa 2013). Davis was 18 when he murdered Nick Creson. Therefore, under Tennessee law, he was an adult. Tenn. Code Ann. § 37-1-102(b)(5)(E).

In *Guerrero*, 2015 WL 2208546,

> [t]he trial court sentenced the Defendant to two consecutive life sentences and to nine consecutive fifteen-year sentences to be served consecutively to the life sentences, for an effective sentence of two life terms plus 135 years. Almost six years later, the Defendant filed a motion pursuant to Tennessee Criminal Procedure Rule 36.1 requesting that the trial court correct an illegal sentence because his life sentences requiring 100% service of sixty

---

[6] *Roper v. Simmons*, 543 U.S. 551 (2005).

[7] *Graham v. Florida*, 560 U.S. 48 (2010).

[8] *Miller v. Alabama*, 567 U.S. 460 (2012)

- 14 -

years' confinement less sentencing credits up to 15% were tantamount to life sentences without the eligibility or possibility of parole. The trial court summarily dismissed the motion for failure to state a colorable claim.

*Guerrero*, 2015 WL 2208546, at \*1. The Court of Criminal Appeals concluded that the sentence was not illegal. *Id*.

> Based on the Defendant's briefs, it appears he believes that he was sentenced to life imprisonment with the possibility of parole, but our statutes do not contain that terminology. *See* T.C.A. § 39-13-202(c)(1)-(3) (stating the possible punishment for first degree murder includes death, life imprisonment without the possibility of parole, and life imprisonment). The Defendant received two life imprisonment sentences for two first degree murders committed after July 1, 1995. The life imprisonment sentences imposed do not entitle the Defendant to parole; however, Tennessee statutes permit release from confinement after serving fifty-one years. *See id*. § 40–35–501(i)(1). In comparison, defendants sentenced to life imprisonment without the possibility of parole are not eligible for release from confinement. *See id*. § 40-35-501(g). As a result, the life imprisonment sentences imposed by the trial court are not the equivalent to life imprisonment without the possibility of parole and are not in direct contravention of any statute. We conclude that the court properly dismissed the Defendant's motion for a corrected sentence pursuant to Rule 36.1 and that he is not entitled to relief.

*Id*. at \*3 (emphasis omitted). In the instant case, the chancellor also found that there is a meaningful distinction between a sentence of life and a sentence of life without parole. In support of her opinion, she emphasized the following language from Tennessee's pattern jury instructions: "A defendant who receives a sentence of imprisonment for life shall not be eligible for release until the defendant has served at least fifty-one (51) full calendar years of such sentence. A defendant who receives a sentence of imprisonment for life without parole shall never be eligible for release." 7 TENN. PRAC. PATTERN JURY INSTR. T.P.I.-CRIM. 7.04(b) (footnote omitted).

In support of his argument, Davis presented life expectancy data in an attempt to show that requiring incarceration for 51 years before allowing eligibility for release means that a person receiving a life sentence has a 98.5% likelihood of dying before getting out of prison. This, says Davis, effectively turns a life sentence into life without parole. However, "most courts . . . have found that the life expectancy of a particular defendant is irrelevant for the purposes of sentencing." Cristina J. Pertierra, *Do the Crime, Do the Time: Should Elderly Criminals Receive Proportionate Sentences?*, 19 NOVA L. REV. 793, 819 (1995). As one commentator put it:

There is probably a stronger legal and public policy basis for rejecting the consideration of life expectancy and the proportionality argument for leniency. Judges and juries probably should not be in the business of calculating life expectancies, especially considering the unpredictability of the myriad variables that may or may not contribute to life expectancy in a particular individual. Imposition of sentences based on life expectancy may also have a negative deterrent effect if potential elderly offenders view the expected level of punishment for a crime as sufficiently low to justify the risk. Finally, "pro-rating" sentences based on age and other factors relevant to life expectancy necessarily results in highly variable sentences across a group of offenders, potentially raising Fourteenth Amendment equal protection concerns. While there is some difference of opinion, courts and commentators overwhelmingly seem to agree that prison sentences need not be proportional to life expectancy.

Dawn Miller, *Sentencing Elderly Criminal Offenders*, 7 NAELA J. 221, 245 (2011) (footnotes omitted). *See also United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003) ("Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms."); *Alvarez v. State*, 358 So.2d 10, 11 (Fla.1978) ("We reject the notion that an individual's life expectancy should be used, or was intended by the Legislature to be used, to mark the longest term which a particular defendant should serve. Any sentence, no matter how short, may eventually extend beyond the life of a prisoner."); *Greco v. State*, 48 A.3d 816, 838 (Md. Ct. App. 2012) (quoting *Alvarez*); *State v. Jones*, No. 2013AP1782-CR, 2014 WL 1884508, *3 (Wisc. Ct. App. May 13, 2014) ("'[T]he defendant's life expectancy, coupled with a lengthy sentence, while perhaps guaranteeing that the defendant will spend the balance of his or her life in prison, does not have to be taken into consideration by the [trial] court.'") (quoting *State v. Stenzel*, 688 N.W.2d 20, 27 (Wisc. Ct. App. 2004)).

In *State v. Hogg*, 448 S.W.3d 877, 890 (Tenn. 2014), the Tennessee Supreme Court discussed how appellate courts examine sentences:

When a defendant challenges the length, range, or manner of service of a sentence, this Court reviews the trial court's decision under an abuse of discretion standard, with a presumption of reasonableness granted to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." This same deferential standard applies to consecutive sentencing. Whether a defendant is sentenced concurrently or consecutively is a matter primarily within the trial court's discretion.

(citations omitted). In *Hogg*, the Supreme Court modified the defendant's sentence "to an effective term of 156 years." *Hogg*, 448 S.W.3d at 891.

The Tennessee Criminal Sentencing Reform Act of 1989 contains two sections that list its purposes and principles. The purposes of the Act, found in Tenn. Code Ann. § 40-35-102, include: "imposition of a sentence justly deserved in relation to the seriousness of the offense," "consistent treatment of all defendants," "predictability," prevention of crime, "promote respect for the law," "provid[e] an effective general deterrent," and "exclude all considerations respecting race, gender, creed, religion, national origin and social status of the individual." Tenn. Code Ann. § 40-35-102(1), (2), (3), & (4). Each of these purposes counsels against using life expectancy as a factor in sentencing.[9]

The Sentencing Reform Act lists its principles in Tenn. Code Ann. § 40-35-103. It includes the principles that "sentences involving confinement should be based on . . . [c]onfinement [being] necessary to avoid depreciating the seriousness of the offense or . . . to provide an effective deterrence to others," "[t]he sentence imposed should be no greater than that deserved for the offense committed," and "[i]nequalities in sentences that are unrelated to a purpose of this chapter should be avoided." Tenn. Code Ann. § 40-35-103(1), (2) & (3). These principles also counsel against using life expectancy as a factor in sentencing.[10]

Tennessee statutes and case law show that Tennessee, like many other states, does not consider life expectancy when sentencing a defendant.

---

[9] One commentator has observed that,

> According to the life tables published in the *Vital Statistics of the United States*, the life expectancy of women is longer than that of men, and men and women belonging to the white race live longer than men and women belonging to the black race. Thus, the courts would need to consider the sex and race of a defendant when calculating a particular defendant's life expectancy. . . . [O]ne must question exactly how far a court would have to go in determining a particular defendant's life expectancy. Would a court have to consider the fact that the defendant lives near a nuclear power plant? Or that the defendant resides in a dangerous neighborhood? What if the defendant has in all probability shortened his life span by abusing drugs or alcohol?

Pertierra, 19 NOVA L. REV. at 816 (footnotes omitted).

[10] The Sentencing Reform act provides that "youth or old age" may be a mitigating factor if the defendant "lacked substantial judgment in committing the offense." Tenn. Code Ann. § 40-35-113(6).

CONCLUSION

The judgment of the trial court is affirmed. This matter is remanded with costs of appeal assessed against the appellant, Mr. Davis, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE